544 F.2d 992
 Juanita HARTLAND, Plaintiff-Appellee,
v.
ALASKA AIRLINES, a corporation, and the Boeing Company, a
corporation, Defendants-Appellants,
and
United States of America, et al., Third-Party Defendants-Appellants.
Juanita HARTLAND et al., Plaintiffs,
v.
ALASKA AIRLINES, INC., et al., Defendants,
Ely, Guess & Rudd, as Attorneys for Carol Stendingh,
personal representative and administratrix of the
Estate of Mabel Sampson, Decedent, Appellants.
Martha Susan GOLUB, Executrix of the Estate of Harvey Golub,
Deceased, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 Nos. 72-2531, 73-3621 and 74-1945.
 United States Court of Appeals,
Ninth Circuit.
 April 2, 1976.
As Modified on Denial of Rehearing Nov. 11, 1976.
 
 1
 David H. Bundy (argued), of Ely, Guess & Rudd, Anchorage, Alaska, for appellants in No. 73-3621.
 
 
 2
 Seymour L. Ellison (appeared), San Francisco, Cal., for appellees in No. 73-3621.
 
 
 3
 Edward M. Digardi (argued), of Nichols, Williams, Morgan & Digardi, Oakland, Cal., Gregg, Fraties, Petersen & Page, Anchorage, Alaska, for plaintiff-appellant in No. 74-1945.
 
 
 4
 James B. Bradley (argued), Juneau, Alaska, for defendant-appellee in No. 74-1945.
 
 
 5
 Before DUNIWAY and WALLACE, Circuit Judges, and MURPHY,* District Judge.
 
 
 6
 MURPHY, District Judge.
 
 
 7
 In No. 72-2531 the United States is the appellant. It has moved for voluntary dismissal of the appeal. No party to the proceedings in the District Court has objected, although all have been served. Accordingly, we dismiss the appeal.
 
 
 8
 In No. 73-3621 the Alaskan law firm, Ely, Guess & Rudd, Inc., representing the administratrix of the Estate of Mabel Sampson, and in No. 74-1945 Martha Susan Golub, executrix of the Estate of Harvey Golub, each appeal from separate orders of the United States District Court for the Northern District of California.
 
 
 9
 The captions, or titles, or labels in each case, as used by the District Court and by this Court, are misleading and inaccurate, recalling to our mind the observation that Mr. Justice Cardozo made in a different context, viz., "A fertile source of perversion in constitutional theory is the tyranny of labels." Snyder v. Massachusetts, 291 U.S. 97, 114, 54 S.Ct. 330, 335, 78 L.Ed. 674, 682 (1934).
 
 
 10
 A review of some of the facts antedating each of these orders is necessary to bring into focus the manner in which inaccurate captions came about. It is our conclusion that the effect in each case was to create the illusory appearance of jurisdiction in the District Court.
 
 
 11
 On September 4, 1971, an Alaska Airlines plane crashed near Juneau, Alaska, causing the death of all 111 persons aboard. Two of the persons killed were Mabel Sampson and Harvey Golub, both residents of Alaska. The law firm of Ely, Guess & Rudd, Inc., representing the Sampson Estate, filed no lawsuit in any State or Federal court. The Golub executrix, on the other hand, brought suit against Alaska Airlines in the Superior Court of the State of Alaska, First Judicial District, and a separate suit under the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.) against the United States in the United States District Court, District of Alaska.
 
 
 12
 More than a year after the fateful crash, the Judicial Panel on Multidistrict Litigation entered an order on November 15, 1972, "that the actions listed on the attached Schedule A be, and the same hereby are, transferred to the Northern District of California and, with the consent of that court, are hereby assigned to the Honorable Peirson Hall for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407" (emphasis ours) In re Air Crash Disaster at Juneau, Alaska on September 4, 1971, 350 F.Supp. 1163, 1164 (Jud.Pan.Mult.Lit.1972). Schedule A reads:
 
 
 13
 "SCHEDULE A DOCKET NO. 107
----------- --------------
 Northern District of California
 -------------------------------
Ali Aunalla, etc. v. Alaska Civil Action
Airlines, et al. No. C-71-2363-PMH
William A. Parsons, etc. v. Civil Action
Alaska Airlines No. C-72-546-PMH
Larry A. Peak v. Alaska Civil Action
Airlines No. C-71-1918-PMH
Juanita Hartland v. Alaska Civil Action
Airlines, et al. No. C-71-1730-PMH
Patricia Hartland v. Alaska Civil Action
Airlines, et al. No. C-71-1729-PMH
Tracy Christine Hartland v. Civil Action
Alaska Airlines, et al. No. C-71-1861-PMH
 District of Alaska
 ------------------
Robert E. Rothberger, Sr., etc. Civil Action
v. Alaska Airlines, Inc., et al. No. J-4-72
 Western District of Washington
 ------------------------------
Cheryl Ellen Null v. United Civil Action
States of America No. 390-72C2"
 
 
 14
 The eight actions so transferred obviously did not include the Sampson "claim" or the Golub actions. It should be noted, too, that the order made pursuant to 28 U.S.C. § 1407, using the language of that statute, transferred the cases "for coordinated or consolidated pretrial proceedings" (28 U.S.C. § 1407). Section 1407 further provides that: "Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated * * *."
 
 
 15
 It is of interest also to note that the opinion of the Multidistrict Litigation Panel stated: "More than 30 other actions arising from the accident are pending in the state courts of Washington and Alaska." (Emphasis ours.) The opinion also recites the following at pages 1163-64:
 
 
 16
 "The six California actions are assigned to Judge Peirson Hall.[1] Judge Hall held a pretrial conference in February 1972, after notice to representatives of all decedents, to consider methods of disposing of all claims arising from the crash. Counsel for all parties in the federal actions as well as many state court counsel attended this conference and a stipulation to expedite consolidated discovery for all cases was discussed. At subsequent conferences a Plaintiffs' Discovery Committee was appointed to represent all state and federal plaintiffs and a stipulation concerning the use of consolidated discovery was approved by the court and later circulated to all plaintiffs and potential plaintiffs with the recommendation of Plaintiffs' Discovery Committee that it be executed.
 
 
 17
 1. Judge Hall has also been assigned to the other districts in which actions are pending by the Chief Judge of the United States Court of Appeals for the Ninth Circuit.
 
 
 18
 "The stipulation provides that discovery on the liability issue will occur in the Northern District of California or the district designated transferee district by the Panel under 28 U.S.C. § 1407. Discovery obtained by this manner may be used by a party to the stipulation in any forum. Discovery in other actions is stayed by agreement and those who do not sign the stipulation cannot get the benefit of the consolidated discovery effort. This stipulation has been signed by all defendants except the United States, by all federal plaintiffs and by a number of state court plaintiffs.
 
 
 19
 "Pursuant to the stipulation, Plaintiffs' Discovery Committee has completed document discovery from Alaska Airlines and has begun depositions. Judge Hall has also heard and granted a petition to perpetuate testimony as to the United States and the United States is now producing documents to the plaintiffs. All of this has taken place under the supervision of the Northern District of California court. Discovery in the other cases has been stayed by the stipulation."
 
 
 20
 On February 23, 1973, Judge Hall made an order in six cases originally assigned to him while sitting by general designation in the Northern District of California pursuant to 28 U.S.C. § 292(b) which are the same six California cases transferred to him pursuant to the Multidistrict Litigation Panel pursuant to 28 U.S.C. § 1407 for "coordinated or consolidated pretrial proceedings." In such order he related what has been described above in the Multidistrict Panel opinion.
 
 
 21
 Attached to the order is the stipulation; and it bears the signatures of a number of people, but not including anyone signing for the United States or Golub or Sampson.
 
 
 22
 In paragraph 2 of such stipulation it is stated:
 
 
 23
 "2. It is further agreed that any present or future litigant who has refused, or shall refuse, to accept or be bound by this Stipulation shall derive no benefit from such discovery, and that all discovery material, deposition transcripts, documents, things, exhibits and like matter shall be sealed by order of Court and used only in, and for determination of, the litigation of the parties who are or may be signatory to this Stipulation."
 
 
 24
 He then mistakenly paraphrased the order of the Multidistrict Litigation Panel as follows:
 
 
 25
 "On November 15, 1972 the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, entered its decision and order (Docket No. 107) consolidating all cases arising out of the above mentioned crash and transferring them to the Northern District of California and appointed Peirson M. Hall, Senior Judge, as the transferee judge." (Emphasis ours.)
 
 
 26
 Judge Hall, in his order of February 23, 1973, stated that there were now 35 cases pending in his court under their respective individual docket numbers and under Multidistrict Litigation Panel docket number 107. Then, as transferee judge, he appointed a Committee of lawyers to conduct discovery and "to represent all plaintiffs signing said stipulation and not otherwise represented at all pretrial conferences." More significantly, he ordered:
 
 
 27
 "VI. That it is fair and just that those who are deriving benefits from efforts of counsel inuring to the benefit of all claimants resulting from the death of passengers should bear their fair share of repayment of the costs and payment for counsel's skill and time and effort which have been devoted to the common question of establishing liability, but that the Court is unable at this time, in view of the presently appearing necessity of requiring a trial on the question of liability, to make a determination of, or establish a formula for determining, the percentage, or the amount, that should be contributed to a common fund for the payment of such common services or the repayment of such common costs, but, that it is in the interest of justice that such a fund be established and maintained in the Clerk's office so that at the conclusion of the cases arising from said aircrash, or at such other time as may be appropriate, the Court will be able to make a just and fair distribution of such fund. At the time of distribution, consideration will be given to the contribution of time and skill of, and cost advanced by, all counsel to the issue of liability, and to the total expenditure of any costs by all counsel, and all other factors which bear upon a fair and just distribution of fees and costs on the question of liability.
 
 
 28
 VII. All parties plaintiff will be expected to reimburse plaintiffs' liaison counsel for expenses and disbursements incurred in discovery proceedings, including depositions, production of documents, exhibits, administration and coordination of discovery and the cost of reproduction and distribution of discovery material and documents as may be required. Use of the Plaintiffs' Discovery Committee's work product by any counsel in any form is subject to the orders of this Court and no such product of discovery will be made available to any counsel without written agreement from said Committee or prior order of this Court."
 
 Re: Sampson
 
 29
 On June 11, 1973, the law firm of Ely, Guess & Rudd, Inc., received a written offer from Alaska Airlines' attorneys to settle the Sampson claim, which offer included the phrase: "It is a condition of the foregoing offer that you obtain Judge Hall's approval of the settlement." A member of the firm telephoned Judge Hall's deputy, Mrs. Thelma Alden, complaining that no court could have jurisdiction to require approval of the settlement and further explained that as lawyers they had a moral and legal obligation to accept the settlement because the onus of Judge Hall's approval fell on the law firm and not on the client. Mrs. Alden replied on June 13th ignoring the inquiry and stating that if the law firm would "deposit one-fifth of their fee or 5 percent of the total amount of the settlement whichever is greater, the Court would approve the settlement." The law firm replied by letter dated September 21, 1973, stating:
 
 
 30
 "Enclosed is an original and one (1) copy of a Stipulation entered into between the administratrix of the estate of Mabel Sampson and Alaska Airlines. That Stipulation sets forth the sum settled for, the amount of the costs to be borne by our clients, and the amount of our fee. No mention is made in that Stipulation of the amount of the check mentioned above because that is, clearly, a matter which concerns only Alaska Airlines, this firm, and Your Honor.
 
 
 31
 The personal representative of Mabel Sampson's estate did not file suit. Counsel for Miss Sampson's estate did not sign the Stipulation regarding discovery, and has not received any benefit of any kind from the efforts of the discovery committee. For those reasons, if for no other, we ask that you approve the settlement in the matter of her claim without the requirement of any deposit. We ask that you inform us and Mr. Charles Hagans, Hagans, Smith & Brown, 329 F Street, Suite 210, Anchorage 99501, of your decision so that we may have the check exchanged for one payable to this firm.
 
 
 32
 With all respect to Your Honor, the fact that we have written this letter, and that we have asked your approval of this settlement, should not be deemed a concession on our part that any court has jurisdiction in this matter. We have never believed, and we do not now believe, that any court has such jurisdiction." (Emphasis ours.)
 
 
 33
 Judge Hall signed an order, dated October 10, 1973, approving the compromise settlement and ordered the law firm to deposit with the Clerk 5 percent of its settlement, or $3,250, "which * * * shall * * * be retained by the Clerk as a portion of a common fund for distribution and payment of costs and services, commonly incurred and expended on the question of liability to be hereinafter determined as above set forth." He reiterated in the order much of what he ordered on February 23, 1973, but fixed a percentage for the amount to be deposited in the "Fund" by counsel. Paragraph 10 of the order provides:
 
 
 34
 "10. That it is fair and just that those who are deriving benefits from efforts of counsel inuring to the benefit of all claimants resulting from the death of passengers should bear their fair share of repayment of the costs and payment for counsel's skill and time and effort which have been devoted to the common question of establishing liability, but that the Court is unable at this time to make a determination or establish a formula for determining the percentage or the amount that should be contributed to a common fund for the repayment of such common costs and common service but that it is in the interest of justice that such a fund should be established and maintained in the Clerk's office so that at the conclusion of the cases arising from said aircrash, or at such other time as may be appropriate, the Court will be able to make a just and fair distribution of such fund; and that in the meanwhile it is fair and just that the costs expended by counsel in the within case be returned to them, but that before the Clerk transfers any funds or checks on deposit with him in settlement of the within litigation, counsel for claimant in the above-entitled matter shall deposit with the Clerk one-fifth of their fee, or 5% of the total award, whichever is greater. That if workmen's compensation is refunded, the compensation carrier has received benefits from the work of counsel in the actions, and should deposit 5% of its award, if any, in said fund. At the time of distribution consideration will be given to the contribution of time and skill of and costs advanced by all counsel on the issue of liability, and to the total expenditure of any costs by all counsel, and all other factors which bear upon a fair and just distribution on the question of liability."
 
 
 35
 When the law firm sent $3,250 on November 9, 1973, pursuant to Judge Hall's order, it wrote:
 
 
 36
 "Enclosed please find a check in the amount of $3,250.00 made payable to the Clerk of the U. S. District Court for the Northern District of California. This check is sent to you in compliance with the order entered on October 11, 1973, by Judge Peirson M. Hall. Judge Hall in that order approved the settlement of the claim of the Estate of Mabel Sampson, decedent, against Alaska Airlines, which claim arose by reason of the Juneau air disaster in September, 1971. Judge Hall's order requires the deposit of the above-mentioned sum of money with the Clerk of the U. S. District Court for the Northern District of California.
 
 
 37
 This deposit of $3,250.00 is made without prejudice to this firm's right to contest Judge Hall's jurisdiction in the above-captioned matter and without prejudice to this firm's right to appeal from so much of Judge Hall's order as requires the above-mentioned deposit."
 
 
 38
 The caption of the order approving the settlement and compelling the law firm to deposit $3,250 reads:
 
 
 39
 The notice of appeal to this Court has the identical caption.
 
 Re: Golub
 
 40
 The facts in the Golub appeal are as follows:
 
 
 41
 The Golub estate, it will be recalled, sued Alaska Airlines in the Superior Court of the State of Alaska. (It was never removed to the United States District Court, there being no diversity.) The estate also sued the United States under the Federal Tort Claims Act in the United States District Court for the District of Alaska. This latter action was transferred to the United States District Court for the Northern District of California, together with 53 other Alaska Airlines crash cases filed in various United States District Courts of the Ninth Circuit, by an order of Judge Hall dated August 28, 1973, "on all issues and for all purposes." The Judge stated in the order that he was acting sua sponte. Parenthetically, the Golub Federal Tort Claim case had been previously transferred from the District of Alaska to the Northern District of California by the Clerk of the Multidistrict Panel as a "tagalong" case pursuant to Rule 9 of the Rules of Procedure of the Panel on Multidistrict Litigation (28 U.S.C. § 1407) as having common questions[1] of law and fact with the previously transferred cases pursuant to the Multidistrict Panel order.
 
 
 42
 We need not consider on this appeal whether Judge Hall's sua sponte order transferring to the Northern District of California and himself the 50-odd District Court cases for all purposes transcended his authority, since that issue has not been raised or briefed.[2]
 
 
 43
 We must consider another action and order, however, since its caption has a direct relation to the issue involved.
 
 
 44
 On April 4, 1973, Alaska Airlines instituted an action in the United States District Court for the District of Alaska seeking a declaratory judgment against all the plaintiffs who had suits pending against it in the state courts of Alaska. Jurisdiction was allegedly based on the federal question statute, 28 U.S.C. § 1331. The federal question jurisdiction is suspect and appears to be a ruse to lay the foundation for a transfer order transferring the state actions to the United States District Court for the Northern District of California. The complaint alleged that Congress intended, by the Federal Aviation Act, 49 U.S.C. § 1301 et seq. and the Multidistrict Litigation Act, 28 U.S.C. § 1407, to preempt the field of pretrial discovery in air crash disasters, hence the federal question. As suspected, this "action" was "consolidated on liability" with the Multidistrict litigation in Judge Hall's court in the Northern District of California by order of Judge Hall. Whether anything was ever done in that action other than to transfer it to Judge Hall's court, does not appear in the record before us. The record does reveal that some of the defendants answered and raised the jurisdiction question, but one thing is certain from the record before us, the effort to serve Mrs. Golub failed and she has never been served with a summons in that action nor has she appeared therein.
 
 
 45
 On November 23, 1973, the attorneys for Alaska Airlines wrote to Judge Hall in response to the request of his clerk, Mrs. Alden, with regard to their negotiations to settle the Golub case, specifically, the case that Mrs. Golub had filed in the Superior Court in Juneau against Alaska Airlines, The Boeing Company, and Collins Radio Company. The lawyers advised the Judge that after several meetings they were able to resolve the matter for the gross amount of $435,000 on condition "that necessary court orders approving the settlement be obtained and that a 5% assessment of the gross amount, or 20% of the attorneys' fees, be paid into the court pursuant to your previous orders. As part of this agreement it is necessary that Mr. Digardi obtain an order from you approving the over-all settlement. No further requirements were made with regard to any stipulations or the language of the order."
 
 
 46
 Thereafter, Mrs. Golub, as executrix of her husband's estate, in a petition sworn to on January 24, 1974, sought the approval of the United States District Court for the Northern District of California of the $435,000 settlement with Alaska Airlines. She captioned her petition:
 
 
 47
 Paragraph 5 of her petition states in part:
 
 
 48
 "In the action pending in the Superior Court in the State of Alaska, First Judicial District at Juneau, defendant, Alaska Airlines, has offered to pay the sum of $435,000 in full settlement of that action, said sum to be apportioned between the widow and the minor child. Martha Susan Golub has executed a general release as requested by Alaska Airlines, a copy of which is attached hereto and marked Exhibit A."
 
 
 49
 Such release released not only Alaska Airlines but the United States Government, Collins Radio Company, The Boeing Company and Hughes Air Corp. In addition, it released all corporations or persons which may be alleged to be or found to be responsible in whole or in part for the accident on September 4, 1971.
 
 
 50
 In paragraph 6 of her petition she states that the Superior Court for the State of Alaska, First Judicial District at Juneau, approved, on January 21, 1974, the settlement of $435,000 and the method of apportionment and the attorneys' fees in the sum of $144,855.
 
 
 51
 The last paragraph of Mrs. Golub's petition clearly brought to the District Court's attention the objection to the payment of any money by either the petitioner or petitioner's counsel and asked that the money deposited be refunded, since it was paid under protest on the ground that the United States District Court had no jurisdiction to regulate settlements made in the Superior Court of the State of Alaska.
 
 
 52
 Thereafter, Judge Hall signed an order on February 13, 1974, approving the settlement and ordering the attorneys to forthwith deposit with the Clerk cash in the sum of $28,971.00, "which cash, subject to the order of the court, be retained by the Clerk as a portion of a common fund for distribution and payment for costs and services commonly incurred and expended on the question of liability to be hereafter determined as above set forth by the court, jurisdiction for which is reserved."
 
 
 53
 Judge Hall's order, which is the order appealed from, has the following two captions:The same two captions are used in the notice of appeal.
 
 DISCUSSION
 
 54
 28 U.S.C. § 1291 defines the perimeters of our jurisdiction of appeals from the district courts as follows: "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States * * *." (Emphasis ours.) Unfortunately, Congress has not defined "final," and the Supreme Court, in its most recent consideration of § 1291, frankly admits that the problem is abstruse.
 
 
 55
 In Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 170-71, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732, 744 (1974), it stated:
 
 
 56
 "While the application of § 1291 in most cases is plain enough, determining the finality of a particular judicial order may pose a close question. No verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide an utterly reliable guide for the future.[9] We know, of course, that § 1291 does not limit appellate review to 'those final judgments which terminate an action * * *,' Cohen v. Beneficial Loan Corp., 337 U.S. (541), at 545 (69 S.Ct. 1221, at 1225, 93 L.Ed. 1528 (1949)), but rather that the requirement of finality is to be given a 'practical rather than a technical construction.' Id., at 546 (69 S.Ct., at 1226). The inquiry requires some evaluation of the competing considerations underlying all questions of finality 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.' Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511 (70 S.Ct. 322, 324, 94 L.Ed. 299) (1950) . . . .
 
 
 57
 9. As long ago as 1892 the Court complained: 'Probably no question of equity practice has been the subject of more frequent discussion in this court than the finality of decrees. . . . The cases, it must be conceded, are not altogether harmonious.' McGourkey v. Toledo & Ohio R. Co., 146 U.S. 536, 544-545 (13 S.Ct. 170, 172, 36 L.Ed. 1079). In the intervening years the difficulty of resolving such questions has not abated. As Mr. Justice Black commented in Gillespie v. U. S. Steel Corp., 379 U.S. 148, 152 (85 S.Ct. 308, 311, 13 L.Ed.2d 199) (1964), 'whether a ruling is "final" within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and . . . it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the "twilight zone" of finality.' "
 
 
 58
 The Supreme Court in Cohen acknowledged that there is a "small class" of decisions from which an appeal can be taken, namely, (1) where the order finally determines rights "separable from, and collateral to" the main action; (2) the collateral rights are "too important to be denied review"; (3) such rights "will have been lost, probably, irreparably" after final judgment is entered. Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528, 1536 (1949).
 
 
 59
 It cannot be denied that the Sampson and Golub orders pose difficult questions if further proceedings relating thereto are to follow in the District Court because "(t)he inquiry requires some evaluation of * * * 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.' " Eisen v. Carlisle & Jacquelin,supra, 417 U.S. at 171, 94 S.Ct. at 2149, 40 L.Ed.2d at 745. In Sampson, the likelihood is more remote than in Golub, since the District Court had not even a semblance of jurisdiction original, ancillary or pendent to order anything or anybody, and least of all to compel lawyers who were not parties to the action to pay $3,250 into a fund. There was just "no action" pending anywhere.
 
 
 60
 In Golub, the question is closer, although we are unable to find in any of the District Court's orders a reservation by it for a redetermination of the amounts due to the Discovery Committee for its efforts and skill when at the same time we are conscious that Cohen should not be extended or abused, since it is of paramount importance that the guardians of Federal appellate procedure be constantly alert in their apprehension of piecemeal review.
 
 
 61
 We refrain, however, from deciding whether either order is appealable. We can accomplish the same result by treating each as a petition for mandamus since they both relate to the usurpation of power by the District Court. Such activity is properly reviewable by writs of mandamus. Parr v. United States, 351 U.S. 513, 520, 76 S.Ct. 912, 917, 100 L.Ed. 1377, 1384 (1956).
 
 
 62
 When a district court has taken action which a party claims was beyond its jurisdiction as distinguished from being erroneous within its jurisdiction, this Court has the power to set matters right. 28 U.S.C. § 1651; Will v. United States, 389 U.S. 90, 95-96, 98 n. 6, 88 S.Ct. 269, 273-274, 275, 19 L.Ed.2d 305, 310-311, 312 (1967). Assuming that the orders are not appealable, we should then treat the appeals as petitions for mandamus. Shapiro v. Bonanza Hotel Co., 185 F.2d 777, 779 (9th Cir. 1950); Steccone v. Morse-Starrett Products Co., 191 F.2d 197, 199-200 (9th Cir. 1951). In Shapiro we explained why the appeal could be treated as a petition for a writ of mandamus. At p. 779, we said:
 
 
 63
 "However, we feel that under the particular facts of this case, and the matter being only one of form, we may properly treat this appeal as though it were a petition for a writ of mandamus. This court has power to issue the writ in aid of its appellate jurisdiction. While it is true that the writ is an extraordinary remedy to be applied with caution we are of the opinion that sufficient grounds exist here to issue the writ if it clearly appears that the district court was in error." (Footnotes omitted.)
 
 
 64
 While it is true that Judge Hall would be a necessary party to such a petition and is not in fact named, we were told on oral argument that Judge Hall had asked the Plaintiffs' Discovery Committee to represent him on the appeal. The Committee did, and in fact it filed a brief in each appeal in support of both orders and orally argued in support of the orders, although it was not a party to either appeal, nor was it an amicus curiae.
 
 
 65
 In Cord v. Smith, 370 F.2d 418 (9th Cir. 1966), Judge Duniway, writing for the Court, said at page 421:
 
 
 66
 "Ordinarily, the filing of a notice of appeal brings the whole case to this court, and this court can then make such orders, directed to the court that tried the case, as may be proper. Yet the trial court is not technically a party to the case on appeal. In form, a proceeding under the All Writs Act is different, in that the court is nominally a party to the proceeding. In substance, however, and almost universally in practice, the burden of the litigation is carried by the real parties in interest rather than by the respondent court, just as it was here." (Footnotes omitted)
 
 
 67
 Most recently this practice has been approved in a compelling dictum in Varo v. Comprehensive Designers, Inc., 504 F.2d 1103, 1103-04 (9th Cir. 1974), in which we said:
 
 
 68
 "However, we do not pause to attempt to prove our views because we think that the situation is such on the record here that were we to hold that the order denying the stay was unappealable, we should take the extraordinary step of converting the appeal into mandamus or prohibition, ordinarily something to be done stingily. Shapiro v. Bonanza Hotel Co., 185 F.2d 777, 779 (9th Cir. 1950)."
 
 
 69
 Writs of mandamus are accordingly granted, and the Honorable Peirson Hall is directed and ordered to forthwith cause the Clerk of his Court to withdraw the funds deposited as described in this Opinion, together with the interest accrued thereon, and return the proceeds without undue delay to the respective appellants.
 
 WALLACE, Circuit Judge (concurring):
 
 70
 I concur in the majority opinion except the discussion of the jurisdiction of this court to consider the issues raised by appellants. As to that, I concur in the result only.
 
 
 71
 I would not leave unanswered the question whether an appeal lies in this case. Appellate jurisdiction is alleged under 28 U.S.C. § 1291, providing for appeals from final decisions of the district courts. Appellants seek relief from orders that specified amounts be paid into the district court. The fund thus established will be used to compensate attorneys whose discovery work will benefit all persons with claims arising out of the Alaska Airlines crash. The amount of compensation to such attorneys and the liability of appellants therefor have yet to be determined by the district court.
 
 
 72
 Thus, further proceedings are certain and the orders sought to be appealed are not final. Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911, 916 (1945). Nor is there finality within the meaning of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). That case permits appeals from orders that, among other requirements, finally determine collateral claims which are not subject to adequate review on appeal from the final judgment in the main action. Id. at 546-47, 69 S.Ct. at 1225-26, 93 L.Ed. at 1536-37; accord, Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 688-89, 70 S.Ct. 861, 864-65, 94 L.Ed. 1206, 1210-11 (1950). The orders here fulfill neither of these requirements. No rights are finally determined and the deposit of money into the court will deprive no party of a later appeal raising this issue. Our decision in Preston v. United States, 284 F.2d 514, 515 n. 1 (9th Cir. 1960), although otherwise in point, is distinguishable on the first of these grounds.
 
 
 73
 The majority concludes, however, that we can convert this appeal into a petition for mandamus and on that basis finds the necessary jurisdiction to decide this case. See 28 U.S.C. § 1651. While I concur, the limitation of our foray into the rewriting of documents filed in our court should be carefully noted. Before considering the circumstances which warrant conversion of an appeal into a petition for mandamus, it is worthwhile to note the circumstances in which a petition for mandamus lies. Mandamus may not be used as a substitute for a statutory appeal and has traditionally been available only "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Roche v. Evaporated Milk Association, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185, 1190 (1943). Mandamus has more recently been held to be available to ensure proper judicial administration in cases where appeal was possible only after final judgment. La Buy v. Howes Leather Co., Inc., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). In La Buy, the petitioners sought the writs to review orders referring the litigation to a master in violation of the rules for such referral. The Supreme Court held that Courts of Appeals, in aid of their supervisory powers, can issue writs of mandamus where the actions of the district judge are "palpably improper." Id. at 256, 259-60, 77 S.Ct. at 313, 315, 1 L.Ed.2d 297, 299-300. More recently the Court said:
 
 
 74
 It is, of course, well settled, that the writ is not to be used as a substitute for appeal, . . . even though hardship may result from delay and perhaps unnecessary trial, . . . . The writ is appropriately issued, however, when there is "usurpation of judicial power" or a clear abuse of discretion . . . .
 
 
 75
 Schlagenhauf v. Holder, 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152, 159 (1964) (citations omitted). In 1967 the Court, while reminding the lower courts that the extraordinary writs are to be used only in "exceptional circumstances amounting to a judicial 'usurpation of power'," stated that the writ of mandamus has been properly used "where a district judge displayed a persistent disregard of the Rules of Civil Procedure promulgated by this Court . . . ." Will v. United States, 389 U.S. 90, 95, 96, 88 S.Ct. 269, 273, 274, 19 L.Ed.2d 305, 310 (1967) (citations omitted).[1]
 
 
 76
 The litigation before us presents exceptional circumstances amounting to a judicial usurpation of power and if appellants had applied for mandamus, we could have issued the writ on the authority of La Buy, Schlagenhauf and Will. Appellants did not petition for mandamus, however, and the question before us is whether we should correct their mistake.
 
 
 77
 Several times in the last 26 years, we have treated an appeal from an interlocutory order, which was not appealable under 28 U.S.C. § 1291 or § 1292(b), as a petition for a writ of mandamus. We first did this in Shapiro v. Bonanza Hotel Co., Inc., 185 F.2d 777 (9th Cir. 1950). That was an appeal from a denial of a motion for change of venue on the grounds of forum non conveniens. The cases which have followed include appeals from an order denying recall of execution and entry of final judgment, Steccone v. Morse-Starrett Products Co., 191 F.2d 197 (9th Cir. 1951), and a denial of a motion to disqualify petitioner's attorney, Cord v. Smith, 338 F.2d 516 (9th Cir. 1964), motion to vacate denied, 370 F.2d 418 (9th Cir. 1966). In Varo v. Comprehensive Designers, Inc., 504 F.2d 1103 (9th Cir. 1974), we held that an order requiring the parties to submit to pre-trial arbitration was appealable but noted that if it were not, we would be willing to treat the appeal as a petition for mandamus or to request the district judge to certify the question under 28 U.S.C. § 1292(b). In Mohasco Industries, Inc. v. Lydick, 459 F.2d 959 (9th Cir. 1972), we remanded an appeal from an order vacating attachment of property for certification under 28 U.S.C. § 1292(b) rather than treat the appeal as a petition for mandamus. In United States v. Moore, 368 F.2d 990 (9th Cir. 1966), we declined to convert an appeal of a denial of a motion to quash subpoenae duces tecum into a petition for mandamus and dismissed the appeal.[2]
 
 
 78
 Although no clear pattern emerges from these cases, there is a distinguishing factor between those in which we did convert the appeal and the case before us. In the cases where we treated the appeals as petitions for writs, either serious hardship or prejudice to the appellants would have resulted if the issues raised had not been resolved prior to trial, or the orders would not have been reviewable at all on appeal from a final judgment. In this case there is nothing to prevent appellants from raising the issue by appeal subsequent to final orders from the district court on the distribution of the discovery fund. Nor does it appear that serious hardship or prejudice would result from waiting to appeal a final judgment. Appellants' only harm, if any, is in leaving their funds on deposit with the court.
 
 
 79
 Since this case does not involve the circumstances which heretofore have prompted us to convert an appeal into a mandamus petition, the question before us becomes what additional circumstances warrant taking the "extraordinary step" referred to in Varo of converting an appeal into a petition for a writ. In general, where no serious hardship or prejudice would result, we would be better advised, even where we are confronted with an extreme usurpation of power, to remand for a certification of the appeal pursuant to 28 U.S.C. § 1292(b) as we did in Mohasco Industries, Inc. v. Lydick, supra, 459 F.2d 959, or to grant leave to file a petition for mandamus as the Second Circuit did in Aaacon Auto Transport, Inc. v. Ninfo, 490 F.2d 83 (2d Cir. 1974).
 
 
 80
 The former course would give the district judge an opportunity to reconsider the challenged order; the latter would give the district judge, who is the object of our exercised power, an opportunity to respond. True it is that in most instances the district court is but a nominal party and the right afforded to respond to us is only a matter of form. Shapiro v. Bonanza Hotel Co., Inc., supra, 185 F.2d at 779. However, the record in this case clearly demonstrates that the district judge is vitally interested in the issues presented. I for one would, therefore, be cautious in foreclosing his response. However, the majority points out the district judge adequately provided for a voice and that voice was heard. It is stated that he specifically requested attorneys to respond on his behalf. If so, in this case there is no reason to grant leave to file a petition for mandamus as the district judge has already presented his argument.[3] I therefore concur that mandamus jurisdiction to ensure proper judicial administration is appropriate in this case and that we can, under these limited facts, correct attorney error and convert the appeal into a petition for mandamus.
 
 
 
 *
 The Honorable Thomas F. Murphy, Senior United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 What were the common questions of law and fact are not specified. In the state action the complaint alleged that it was the negligence of Alaska Airlines that caused the fatal crash. In the Federal tort action it was alleged that it was the Government's negligence that caused the accident
 
 
 [2]
 We had always supposed it to be hornbook law that plaintiff's choice of forum should rarely be disturbed. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947); Ford Motor Co. v. Ryan, 182 F.2d 329 (2d Cir.), cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950); 1 Moore, Federal Practice, P 0.145(5), p. 1616 (2d ed. 1975), and cases cited in footnotes 5 and 10
 
 
 [1]
 Professor Moore has termed this use of the prerogative writs "supervisory mandamus," stating that "occasionally immediate review will be justified by the necessity for proper judicial administration in the federal system." 9 J. Moore, Federal Practice P 110.26, at 286, 287 (2d ed. 1975). "The view that the Writs may issue only to prevent frustration of any review at all, . . . has been rejected." Id. P 110.28, at 305
 
 
 [2]
 Other circuits have been more reluctant than we to convert appeals into petitions for mandamus. Although the Second Circuit has occasionally done so, United States v. O'Connor, 291 F.2d 520 (2d Cir. 1961) (appointment of special master); Arrowhead Co., Inc. v. The Aimee Lykes, 193 F.2d 83 (2d Cir. 1951) (transfer under 28 U.S.C. § 1404(a) appeal treated as petition but mandamus denied); Magnetic Eng'ring & Mfg. Co. v. Dings Mfg. Co., 178 F.2d 866 (2d Cir. 1950) (same), the more recent cases have instead granted leave to file a petition if the court thought mandamus warranted. E. g., Aaacon Auto Transport, Inc. v. Ninfo, 490 F.2d 83 (2d Cir. 1974). The Tenth Circuit has followed the latter course. Flora Constr. Co. v. Fireman's Fund Ins. Co., 307 F.2d 413 (10th Cir. 1962), cert. denied, 371 U.S. 950, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963) (denial of permission for plaintiff to appear pro se). The First Circuit has at least once agreed to convert an appeal into a mandamus proceeding, Woodcock v. Donnelly,, 470 F.2d 93 (1st Cir. 1972) (denial of bail), but has also treated an appeal as a request for permission to file a petition for mandamus, In re Harmon, 425 F.2d 916 (1st Cir. 1970) (order confining a criminal defendant to a mental hospital without a competency hearing). The Fourth and Fifth Circuits have consistently refused to convert appeals into petitions, although both have also cited our Shapiro case and stated that they would be willing to follow it in proper circumstances. See, e. g., Leesona Corp. v. Cotwool Mfg. Corp., 308 F.2d 895 (4th Cir. 1962) (order to sever and transfer); United States v. Grand Jury, 425 F.2d 327 (5th Cir. 1970) (denial of motion to quash subpoena duces tecum and for protective order). The Eighth and District of Columbia Circuits have treated appeals as mandamus petitions. Wilkins v. Erickson, 484 F.2d 969 (8th Cir. 1973) (transfer of habeas corpus proceeding); Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584, 592 (1971) (review of decision by Secretary of Agriculture)
 
 
 [3]
 Whether the district judge specifically requested attorneys to speak for him in the appeal subsequently became immaterial. His position was fully discussed in a 39-page brief with a 48-page appendix entitled "Memorandum in Support of Petition for Rehearing" which was filed on behalf of the district judge