**S.B.C. INVESTMENTS, LTD.,**
Petitioner,

v.

**The Honorable Sidney B. BROOKS,
United States Bankruptcy Judge,
Respondent.**

**D.D. INVESTMENTS, INC., Petitioner,**

v.

**The Honorable Sidney B. BROOKS,
United States Bankruptcy Judge,
Respondent.**

Civ. A. Nos. 89–M–311, 89–M–319.

United States District Court,
D. Colorado.

April 4, 1989.

Sidney B. Brooks, U.S. Bankruptcy Judge, Denver, Colo., pro se.

Paul D. Rubner, Daniel W. Pinkston, Rubner & Kutner, Denver, Colo., for petitioner S.B.C.

Thomas B. Kelley, Cooper & Kelley, Denver, Colo., for petitioner D.D.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

These matters are before the Court on the petitions of S.B.C. Investments, Ltd. (SBC) and D.D. Investments, Inc. (DD) seeking a writ of mandamus and prohibition under 28 U.S.C. § 1651 against the Honorable Sidney B. Brooks, Bankruptcy Judge of the United States Bankruptcy Court for the District of Colorado. On February 24, 1989, this court stayed a hearing scheduled for February 27, 1989 in the bankruptcy court and ordered the respondent to show cause why the writ should not issue. Judge Brooks filed his response on March 13, 1989. The relevant facts are not disputed.

On January 6, 1989, voluntary petitions in bankruptcy were filed in three jointly administered Chapter 11 cases, *In re VHSC, Inc.* (89–B–00195–A), *In re Van Schaack & Co.,* (89–B–00196–A), and *In re Van Schaack Residential Realty, Inc.,* (89–B–00197–A). In 1987 and 1988 petitioners entered into loan agreements with Van Schaack & Company evidenced by promissory notes and security interests in certain real and personal property.

In an attempt to purchase Van Schaack & Company, Leo Payne and Leo Payne & Associates, Inc. (Payne) agreed to acquire petitioners' claims against Van Schaack & Company. Payne agreed to acquire SBC's claim and take an assignment in SBC's security interests for $110,000.00. Payne's agreement with DD was to acquire DD's claim and assignment of security interest for $300,000.00.

Contemporaneously with the bankruptcy filings, the debtors and Leo Payne Associates, Inc. entered into a "Management Agreement", subject to the approval of the bankruptcy court. This agreement initially provided for Payne to have full and complete authority and control of the debtors' businesses, but the agreement was subsequently amended to recast Payne's role as one of advising and making recommendations to the debtors and their management. The "Management Agreement" disclosed the existence of the pre-petition agreements with petitioners for the purchase of their claims.

The "Management Agreement" was submitted to the bankruptcy court for approval. Subsequently Payne paid SBC and DD the $110,000.00 and $300,000.00 respectively for their claims and security interests. On February 10, 1989 the bankruptcy court held a hearing on 1) the debtors' motion to approve the "Management Agreement", 2) the debtors' motion to obtain unsecured credit and accord priority status, and 3) the debtors' motion to use cash collateral.

During the course of the hearing, the Official Unsecured Creditors' Committee presented an oral motion to the bankruptcy court. The motion requested that payments due by Payne to various entities, including SBC and DD, be paid into the registry of the bankruptcy court pending a determination as to whether the funds were actually property of the estates. The respondent, Judge Brooks, had expressed concern about the propriety of Payne's dealing at earlier hearings on January 11, 1989 and January 24, 1989. Acting on the oral motion and on factual findings from depositions, Judge Brooks entered an order on February 10, 1989 which 1) directed petitioners to immediately pay the monies they had received earlier from Payne for their claims and security interests into the registry of the bankruptcy court together with "any other funds paid to or for the benefit of any of them by or on behalf of Payne", 2) prohibited Payne from making any further payments to or for the benefit of petitioners, and 3) prohibited Payne and petitioners from entering into any other agreements among themselves without prior approval of the bankruptcy court. Respondent further ordered that "If *all* payments to the Court Registry from the [petitioners] were not made forthwith", then each of them would be required to appear before the bankruptcy court at another hearing on February 17, 1989.

Petitioners appeared specially by counsel before the respondent on the date ordered and argued that the bankruptcy court did not have personal jurisdiction over them because they had not received notice of the hearing; that their Fifth Amendment rights to due process were violated when the Order of February 10, 1989 was entered without providing them with notice or an opportunity to be heard in a reasonable time or manner; that the bankruptcy court did not have subject matter jurisdiction to enter that order as to them and that the relief sought by the Official Unsecured Creditors' Committee could only be pursued through an adversary proceeding or as a contested matter. On February 21, 1989 *nunc pro tunc* February 17, 1989, respondent issued an order reaffirming his order of February 10, 1989 and ordering the petitioners to show cause at a hearing on February 27, 1989 why they should not be subject to sanctions or held in contempt for their failure to pay to the court registry those funds received from Payne for their claims. Respondent also stated that noncompliance with the order of February 21, 1989 might result in daily sanctions subject only to relief from the District Court.

The Fifth Amendment to the United States Constitution states in part that no person shall "be deprived of life, liberty, or property, without due process of law ..."

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Due process requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

■ Judge Brooks entered the order of February 10, 1989 on findings of fact from a hearing held without reasonable notice to the petitioners, without service of process on them, and without obtaining personal jurisdiction over them. As a result of respondent's failure to provide petitioners with the opportunity to be heard at the February 10, 1989 hearing, petitioners were deprived of their right to appear and be represented by counsel, the right to know the substantive legal claims against them, the right to hear the evidence supporting those claims, the right to introduce evidence on their own behalf, the right to cross-examine witnesses, and the right to present proper argument as to law and fact. *See Swindell–Dressler Corporation v. Dumbauld,* 308 F.2d 267, 274 (3d Cir. 1962).

Respondent contends that the circumstances surrounding the debtors' bankruptcy proceedings through the February 10, 1989 hearing required him to protect the integrity of the bankruptcy system and the bankruptcy process from conflicts of interest and the appearance of improprieties based upon what appeared to respondent to be insider dealing. He also contends that the petitioners were subject to the order because they are "insiders" under 11 U.S.C. § 101(30)(B). The petitioners must be given an opportunity to challenge that assertion before coercive power is exercised over them. The order of February 10, 1989 is invalid and the subsequent orders are also invalid as to petitioners.

■ Although not essential to this Court's decision in this matter, the issue of subject matter jurisdiction will be addressed to assist proceedings on remand. The debtors' post-petition "Management Agreement" with Payne submitted for the approval of the bankruptcy court is clearly a core proceeding because it involves matters concerning the administration of the estates under 28 U.S.C. § 157(b)(2)(A) (1988). Since the "Management Agreement" as submitted refers to the agreements to acquire the petitioners' claims and security interests securing those claims as part of a cash collateral strategy, the assignment of petitioners' claims is also within the subject matter jurisdiction of the bankruptcy court because the debtors' rights, liabilities, options, or freedom of action may be affected and because there may be some impact upon the administration of the estates. *See In re Dogpatch, U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir. 1987). The exercise of subject matter jurisdiction, however, requires obtaining personal jurisdiction by appropriate pleadings and process.

This Court has the power to issue a writ of mandamus to the respondent pursuant to 28 U.S.C. § 1651 (1988), which provides in relevant part that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

The writ of mandamus is an extraordinary remedy and the requirements for its issuance are strict. *United States v. Winner,* 641 F.2d 825 (10th Cir.1981). The writ has been traditionally used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 941–42, 87 L.Ed. 1185 (1943). "Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam). The party seeking a

writ of mandamus must show that its right to issuance is "clear and indisputable", and the issuance of a writ of mandamus is within the discretion of the reviewing court. *Kerr v. United States District Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976).

Mandamus can be used to compel compliance with due process requirements. *Elliott v. Weinberger*, 564 F.2d 1219 (9th Cir.1977); *Hartland v. Alaska Airlines*, 544 F.2d 992 (9th Cir.1976) (mandamus is appropriate remedy to correct usurpation of power of federal district court which required persons not within its jurisdiction to make payments into a court-designated fund); *See also Holmes v. United States Board of Parole*, 541 F.2d 1243 (7th Cir. 1976) (mandamus should be construed liberally in cases involving violations of constitutional rights).

The order of February 10, 1989 and the order to show cause of February 21, 1989 placed the petitioners in a position of peril justifying this extraordinary remedy.

Because of the serious violations of the petitioners' procedural due process rights it is "clear and indisputable" that a writ of mandamus must issue.

Therefore, it is

ORDERED that respondent shall forthwith enter an order vacating all portions of the order of February 10, 1989 relating to S.B.C. Investments, Ltd. and D.D. Investments, Inc., and it is

FURTHER ORDERED, that respondent shall forthwith enter an order vacating the order to show cause dated February 21, 1989 *nunc pro tunc* February 17, 1989 directed to S.B.C. Investments, Ltd. and D.D. Ventures, Inc., and it is

FURTHER ORDERED that the matter is remanded to the bankruptcy court for further proceedings not inconsistent with this opinion.