**In re Douglas B. LEIGHTNER, Jr., Mary J. Leightner, Debtors.**

**Bankruptcy Nos. 390–34615–H13, 390–36935–H13.**

United States Bankruptcy Court, D. Oregon.

Nov. 12, 1993.

Susan Henderson, Washington, DC, for IRS.

Douglas B. Leightner, Jr., and Mary J. Leightner, pro se.

Robert W. Myers, Portland, OR, Trustee.

### OPINION

HENRY L. HESS, Jr., Chief Judge.

This matter came before the court upon the chapter 13 trustee's motion to allow the claim of the Internal Revenue Service (IRS) as an allowed secured claim in the amount of $17,798.78. The trustee and the debtor rep-

resented themselves and the IRS was represented at the telephone hearing by Susan Henderson from Washington, D.C.

## 1. Facts.

The relevant facts are not disputed. The debtor filed a chapter 13 petition. The court notified the IRS of the date set for the § 341(a) meeting and the date set for the hearing on confirmation of the debtor's proposed plan. In this case, the notice to creditors of the filing of the case (which was sent to the IRS) states:

"In order to have his claim allowed so that he may share in any distribution from the estate, a creditor must file a claim whether or not he is included in the list of creditors filed by the debtor. Claims which are not filed within 90 days after the above date set for the meeting of creditors will not be allowed, except as otherwise provided by law."

The first date set for the § 341(a) hearing was October 9, 1990. The last day for the IRS to file a timely claim [calculated pursuant to FRBP 3002(c)] was January 7, 1991. The debtor's plan dated October 25, 1990 made no mention of the secured claim of IRS. Paragraphs 2(b), (c) and (d) of the plan provided the following:

"2(b) Payments to secured creditors whose claim are duly proved and allowed as follows: None.
[The claims of each of the creditors listed above shall be allowed as a secured claim in the amount of the value of the security and will be paid in monthly installments as shown until the allowed secured claim together with interest upon the unpaid balance at the contract rate but not to exceed 1% per month has been paid. Secured creditors shall retain their liens until their allowed secured claims have been paid. The remainder of the amount owing shall be allowed as a general unsecured claim and be paid under the provisions of paragraph (d) of this paragraph.]"
"2(c) Debts entitled to priority under and in the order prescribed by § 507 of the Bankruptcy Code."
"2(d) From the balance remaining after the above payments, dividends to unse-cured creditors whose claims are fully proved and allowed as follows: (State whether 100% extension or what percent is to be paid under a composition.). None."

No objections were made to confirmation of the plan and no one appeared at the confirmation hearing. The order of confirmation amended the plan to provide for payment of the secured claim of IRS in the amount of $17,789.78. The order confirming the plan was entered on January 23, 1991. No appeal was taken from the order of confirmation.

On January 24, 1992, approximately one year after the time for filing claims had expired [as calculated under FRBP 3002(c)], the IRS filed a claim in the case. On June 7, 1993, approximately 1 and ½ years after filing the claim, the IRS filed a motion and supporting memorandum for an order allowing the claim even though it was filed late. The motion states that the reason the claim was filed late was that the IRS miscalculated the deadline for filing claims.

On July 1, 1993, the court wrote to counsel for the IRS and advised that the court would take no action on the motion for allowance of the late-filed claim unless the debtor consented to allowance of the claim. On July 12, 1993, the IRS filed a notice of appeal from the court's letter.

The standing chapter 13 trustee in the case then filed a motion pursuant to § 501(c) and FRBP 9006(b) for allowance of the secured portion of the claim of IRS. The trustee recognized that the plan provided for payment of the secured claim and that the debtor would not be able to discharge the lien without payment of the secured claim. The allowance of the secured claim would cause no unexpected harm to unsecured creditors since the confirmed plan contemplated its payment.

The debtor objected to the trustee's motion on various grounds. On September 30, 1993, the court held a hearing on the trustee's motion. The trustee and debtor appeared in person. The IRS appeared through Susan Henderson by telephone. At the hearing, Ms. Henderson represented to the court that the IRS would dismiss the

pending appeal of the court's letter of July 1, 1993 and that any remaining issues should be determined in the context of the trustee's motion.

The court ruled at the hearing that the secured claim of IRS should be allowed as suggested by the trustee for the reasons discussed above. Ms. Henderson agreed to file a memorandum of law on the question of the allowance of the unsecured claim of IRS. The court took the matter under advisement until all memoranda were filed.

After the September 30, 1993 hearing, the court received a letter from Michael Paup, Acting Assistant Attorney General, Tax Division signed by Stephen Fuerth, Chief, Civil Trial Section, Western Region, stating that no memorandum of law would be filed on behalf of the IRS. Ms. Henderson no longer seems to be representing the IRS in this matter.[1] The court then wrote to Mr. Fuerth and asked whether the appeal would be dismissed by the IRS. A response was received from Mr. Paup, again signed by Mr. Fuerth, stating that the appeal would not be dismissed.

2. The Court Has Jurisdiction to Determine the Trustee's Motion Notwithstanding the Pending Appeal.

■ The first argument raised by the IRS at the hearing on the trustee's motion was that this court is without jurisdiction to determine the trustee's motion because of the pending appeal. Although the IRS seemed to have abandoned that argument at the hearing by agreeing to dismiss the pending appeal, it may now be revived in view of the letter from Mr. Paup of the IRS stating that

the appeal will not be dismissed. Unfortunately, the letter from Mr. Paup does not elaborate on the IRS's present position. Thus, the court must address this issue.

Pursuant to FRBP 8001, appeals may only be taken from orders, judgments or decrees. The IRS filed a notice of appeal from a letter of the court. This court did not enter an order either denying or granting the IRS's motion for allowance of its claim. There is no final order, judgment or decree. There is no interlocutory order, judgment or decree. In fact, there is simply no order, judgment or decree to appeal from. The court's letter to the IRS which was "appealed" from simply states that the court will take no further action on the matter. If the IRS wanted to obtain an appealable order, it should have requested the court enter an order.[2] In this case, the IRS made no written request that the court enter a final order before filing its notice of appeal.

The law is well settled that where there is no basis for appeal, the filing of a notice of appeal does not deprive the trial court of jurisdiction over the matter. See, for example, *USA v. Mala,* 7 F.3d 1058 (1st Cir.1993) [available on Lexis at 1993 US App LEXIS 27789] where the Court stated where a litigant appeals " * * * a plainly unappealable order, the trial court may treat the appeal for what it is—a sham—and continue to exercise jurisdiction over the case." *Id.* at 1061.

3. The Secured Claim of IRS Should be Allowed.

The amount and allowance of the secured portion of IRS's claim is apparently no long-

---

1. This is not the first time the IRS has made a representation to the court through an attorney which representation was later retracted by a different attorney with no explanation for the retraction. The court finds this practice unacceptable and, to the extent it causes harm, will consider imposing sanctions against the government if an appropriate motion for such sanctions is filed.

At this point, the IRS has been represented by five different attorneys: Mr. McNamara who filed the motion for allowance of the late-filed claim; Ms. Henderson who represented the IRS at the telephone hearings; Mr. Paup whose name appears on two letters to the court; Mr. Fuerth whose signature appears on

the two letters to the court; and Mr. Wong whose name appears on various pleadings filed with the court. It is difficult for the court to understand why this case requires the services of five government attorneys. It is also interesting to note that none of these attorneys' services would have been necessary if the government had simply filed a timely claim in the first place.

2. In an extreme situation where a court refuses to act, a party may use the mandamus procedure to force the court to enter an order. See, for example, *SBC Investments, Ltd. v. Brooks,* 101 B.R. 257 (Bankr.D.Colo.1989).

er an issue and the court will enter an order allowing the secured claim in the amount of $17,789.78.

4. The Unsecured Claim of IRS Should be Disallowed.

A. Late–Filing is a Basis for Disallowing An Unsecured Claim.

■ The only remaining issue is whether the IRS's unsecured claim should be allowed even though the proof of claim was filed late. In memoranda filed with the IRS's motion for allowance of its claim and in its appeal brief, the IRS admits that FRBP 3002(c) requires the filing of proofs of unsecured claims within 90 days of the first date set for the meeting of creditors. As previously mentioned, the IRS admits that its claim was not filed within this time.

In spite of this fact, the IRS argues that its claim should not be disallowed. In support of this argument, the IRS relies on *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn. 1992). *Hausladen* held that unsecured claims that are filed late under FRBP 3002(c) should not be disallowed. The *Hausladen* court refers to the language of §§ 501 and 502 for the proposition that all filed claims are "deemed allowed." *Hausladen* also notes the provisions of § 726(a)(3) which, under certain circumstances, allows a trustee to pay something to creditors holding unsecured claims that were filed late. The *Hausladen* court refers in its opinion to the legislative history accompanying § 501 which indicates that Congress intended that the bankruptcy rules of procedure would establish the time limits for filing proofs of claims and that such rules "will determine whether claims are timely or tardily filed." *Id.* 146 B.R. at 559 (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 351 (1977)), U.S.Code Cong. & Admin.News 1978, p. 5787. The legislative history is quoted by the *Hausladen* court to support the argument that the rules do not determine whether claims will be allowed or disallowed—only whether they are timely are tardily filed.

Contrary to the holding in *Hausladen*, this court believes the rules do set a time limit for determining whether claims are allowed or disallowed. This reading of FRBP 3002(c) does not conflict with the Code if it is recognized that the rule supplements—but does not alter—the Code. Further, the specific provisions of § 726(a)(3) do not necessarily evince a Congressional intent that all late filed claims be allowed. It can be argued that § 726(a)(3) is an exception to the general rule that tardily filed unsecured claims are disallowed.

In this respect, this court completely agrees with the analysis in *In re Bailey*, 151 B.R. 28 (Bankr.N.D.N.Y.1993). Rather than restate the arguments made in *Bailey*, this court hereby incorporates by reference those arguments and, for those reasons, will disallow the unsecured claim of the IRS on the ground it was tardily filed under FRBP 3002(c).

B. Even if Late–Filed Unsecured Claims Should Not be Disallowed, the Plan Provides for No Payment on Such Claims.

■ However, even if it were true that unsecured claims that are not timely filed under FRBP 3002(c) should not be disallowed, this would not end the matter. *Hausladen* states: "The rights of tardily filing claim holders are not defined by the Code but rather are controlled by the Chapter 13 plan." *Id.* 146 B.R. at 560. If it were concluded that claims tardily filed cannot be disallowed under either the Code or the Bankruptcy Rules, this court agrees with *Hausladen* that a Chapter 13 plan may appropriately make provision for tardily filed claims different than the treatment given for timely filed claims. In this case, the notice to creditors of the filing of the case (which was sent to the IRS) states:

"In order to have his claim allowed so that he may share in any distribution from the estate, a creditor must file a claim whether or not he is included in the list of creditors filed by the debtor. Claims which are not filed within 90 days after the above date set for the meeting of creditors will not be allowed, except as otherwise provided by law."

The only reasonable reading of this language is that creditors must file a claim within the time specified in order to share in

a distribution from the estate. If this provision were objectionable to the IRS, it could have objected to confirmation of the plan. It did not do so and is now bound by the terms of the plan. See Section 1327.

 It is consistent with 9th Circuit precedent to hold that the language from this notice became part of the plan upon confirmation. In *In re Gregory*, 705 F.2d 1118 (9th Cir.1983), the Ninth Circuit Court of Appeals clarified that a creditor need not be specifically named in the plan to be "provided for" by the plan. Thus, where the plan referred to unsecured claimants generally and provided for no dividend to such claimants, the Court held that the plan "provided for" the payment of all unsecured claimants who were listed in the schedules and/or timely notified of the case.

Similarly, in this case, the language of the notice may be incorporated into the plan. Such language clearly states that creditors who do not file timely claims will not be paid. Federal Rule of Bankruptcy Procedure 3002(c) requires proofs of unsecured claims be filed within 90 days of the first date set for the meeting of creditors. The IRS was advised in the first notice from the court that it must file a timely claim in order to share in distributions from the estate and that tardily filed claims would not be allowed. Repeating this language in the plan or order confirming the plan would have been pointless. The law does not require a pointless act.

There are some practical problems presented if an unsecured claim is allowed and entitled to share in distributions from the estate in a chapter 13 case even though it is filed late. It would seem that the only logical result is that tardily filed unsecured claims should receive nothing from the estate in a chapter 13 case. In fact, this is true in all cases in Oregon because of the language in the notice of the first meeting of creditors, as discussed above.

The practical effect of this result is that such claims will be treated the same as disallowed claims, that is, they will be paid nothing. Thus, it may be that the distinction raised in *Hausladen* between an allowed but tardily filed unsecured claim and a disallowed

unsecured claim is the classic distinction without a difference.

5. Conclusion.

This court agrees with the reasoning in *Bailey* and its conclusion that tardily-filed unsecured claims may properly be disallowed on that basis. Even if this were not true, the plan may specify different treatment for such claims. In this case, the plan effectively does so. Under this confirmed plan, such claims will be paid nothing. Under the present plan, there is no distinction between providing for no payment on such claims and disallowing such claims. Thus, the court will enter an order disallowing the unsecured claim of IRS. In the unlikely event the plan is later modified to provide a dividend to late-filed unsecured claims, the IRS may move for reconsideration of the order disallowing its claim as provided by FRBP 3008.