**In re Joseph Patrick McLAUGHLIN and Sheila Ann McLaughlin, Debtors.**

**Bankruptcy No. L91–02306C.**

United States Bankruptcy Court,
N.D. Iowa.

Aug. 10, 1993.

Mary B. Junge, Cedar Rapids, IA, for debtors.

Thomas G. McCuskey, Cedar Rapids, IA, Trustee.

Christa Brusen–Gomez, SBA, Cedar Rapids, IA, for SBA.

Dale Baker, Ia. Dept. of Rev. & Finance, Des Moines, IA, for IDOR.

### ORDERS RE: OBJECTION TO FINAL REPORT and MOTION TO EXTEND TIME

WILLIAM L. EDMONDS, Chief Judge.

The matters before the court are a motion by the debtors to extend the time for filing a proof of claim and the debtors' objection to the trustee's final report and accounting. Hearing on these matters was held on March 11, 1993 in Cedar Rapids.[1] Mary Junge appeared on behalf of the debtors; Thomas G. McCuskey appeared as case trustee; John Schmillen appeared on behalf of the United States Trustee.

#### Findings

Joseph and Sheila McLaughlin (DEBTORS) filed their joint chapter 7 petition on December 19, 1991. Thomas G. McCuskey was appointed case trustee. The "Notice of Commencement of Case . . ." was issued and served on creditors and parties-in-interest on December 24, 1991. As part of the notice, creditors were advised that "[a]t this time there appear to be no assets available from which payment may be made to unsecured creditors. Do not file a proof of claim until you receive notice to do so." Docket no. 4. The notice was served on the debtors, their counsel—Simmons, Perrine, Albright & Ellwood, and upon the Iowa Department of Revenue (IDOR).

On June 11, 1992, the clerk issued and served an "Order Fixing Time for Filing Claims and Directing Notice." According to the Notice, claims were to be filed on or before September 9, 1992. This Notice was

---

1. Hearing on the final report and motion was first set for February 9, 1993. Neither debtors nor their counsel appeared. As a result, the motion to extend was denied, and the final report was approved. Docket nos. 21 and 22. Debtors moved for reconsideration for the rea- son that they had not received notice of the hearing. The U.S. Trustee, the case trustee and the United States did not resist the motion to reconsider. After reconsideration, the court vacated its previous orders, and hearing was held March 11 on the merits of the controversy.

served also on the debtors, their legal counsel, and IDOR. No one contends that this order was not served or received. IDOR did not file a proof of claim, although it had been listed in debtors' schedules as a priority, unsecured claimant having a claim against Joseph McLaughlin in the amount of $6,183.68.

McCuskey filed his trustee's final report and account on December 22, 1992. Docket no. 13. He showed $2,940.00 on hand for distribution; he proposed allowance of $564.40 in administrative claims. The balance of funds in the estate was to be distributed pro rata among nine unsecured creditors representing $247,077.81 in claims, but not including any debt to IDOR. Notice of the trustee's report and accounting was served on IDOR, debtors and their counsel. Docket no. 14. The deadline for objections was set as January 31, 1993.

Debtors objected to the report and distribution on January 8, 1993. Debtors state that they assumed that IDOR would file a proof of claim and that they did not receive notice of IDOR's failure to file. Debtors say they will suffer because certain of IDOR's claims are nondischargeable. A pro-rata distribution to IDOR would decrease their continued liability. Debtors contend that they should not be penalized by IDOR's failure to file and that the court should allow the claims of IDOR to avoid an inequitable result. Debtors argue also that the claims of IDOR are allowable without the necessity of filing pursuant to 11 U.S.C. §§ 726(a)(1) and 507(a)(7).

In addition to objecting to the final report, debtors simultaneously filed a "Motion to Extend Time for Filing Proof of Claim." Docket no. 16. Debtors thereby seek an extension of the period in which they may file proofs of claim on behalf of IDOR. As grounds for the extension, debtors state in part that they were not provided notice of IDOR's failure to file until receiving notice of the trustee's final report and that they had assumed IDOR would properly file. Debtors seek permission to file two proofs, copies of which were attached to their motion. One proof is for a general unsecured claim in the amount of

$253.26 and a priority unsecured claim in the amount of $1,931.11. The second proof is of a secured claim in the amount of $4,744.58. Docket no. 16, attachments Exhibit A. Debtors claim that IDOR has a secured claim in all of debtors' personal property by virtue of Iowa Code § 422.56. As to $1,317.13 of the claim, the lien allegedly dates from November 1, 1990; as to the remaining $3,427.45, the lien allegedly dates from February 1, 1991.

The United States of America, on behalf of the Small Business Administration, objected to the motion to extend on the ground that debtors failed to file a claim on behalf of the IDOR within the time limits prescribed in the Federal Rules of Bankruptcy Procedure. The U.S. Trustee objects to the motion to extend on the ground that the debtors had not demonstrated "excusable neglect" so as to warrant an extension. Docket no. 19. The U.S. Trustee also responded to debtors' objection to the final report disagreeing with debtors' contention that the priority tax claims of IDOR should participate in the distribution without the necessity of filing a proof of claim. Docket no. 20. Thomas McCuskey appeared at the hearing on the final report seeking its approval and resisting the motion to extend. He contends that debtors waited too long to seek approval of the IDOR's claims.

### Discussion

■ The Code does not prescribe the deadlines for the filing of a claim by a creditor or the debtor. The Rules of Procedure set the appropriate deadlines. *In the Matter of Danielson*, 981 F.2d 296, 298 (7th Cir.1992), *reh'g denied* (1993). In chapter 7 cases, the deadline for filing a creditor's claim is fixed pursuant to the provisions of Fed.R.Bankr.P. 3002. In this case, IDOR did not file a proof of claim by September 9, 1992, the deadline set by the court pursuant to Fed.R.Bankr.P. 3002(c)(5). Section 501(c) of the Bankruptcy Code provides that "[i]f a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim." The purpose of this

provision is to allow a debtor to protect himself or herself where the creditor's claim is nondischargeable. Distribution to the creditor lessens the burden of post-discharge repayment. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 351 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 61 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5847, 6307. Rule 3004 fixes the time in which a debtor or trustee may file such a claim. It states in pertinent part:

> If a creditor fails to file a proof of claim on or before the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, the debtor or trustee may do so in the name of the creditor, within 30 days after expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. * * *

■ "For cause shown", the court may enlarge certain time periods on a request made within the original time period. Fed. R.Bankr.P. 9006(b)(1). If the request is made after the period has expired, in addition to cause, the court must also find that the failure to act within the required time was "the result of excusable neglect." *Id.* The court's authority under Rule 9006(b)(1) to extend the time to take various actions does not extend to the filing of creditors' proofs of claim in a chapter 7 case. *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* —— U.S. ——, —— n. 4, 113 S.Ct. 1489, 1495 n. 4, 123 L.Ed.2d 74 (1993). The limits of the court's discretion regarding the timeliness of a creditor's filings is set out in Rule 9006(b)(3) and Rule 3002(c).

■ Although a creditor's claim may be filed at any time during a chapter 7 case, the application of the Rules lead to a determination whether the claim is timely or tardily filed. A filed claim may be disallowed by the court on various grounds. 11 U.S.C. § 502(b). Tardiness is not a ground for disallowance despite the implication of Rule 3002(a) that the claim must be filed in accordance with the Rule to be allowed. *In re Hausladen,* 146 B.R. 557, 560 (Bankr. D.Minn.1992). Whether a claim is timely or tardily filed may affect a creditor's priority in the distribution of assets in a chapter 7 case. 11 U.S.C. § 726(a). However, "[S]ection 726(a)(1), concerning distribution of priority claims, makes no distinction between priority claims which are filed late and those which are filed in a timely manner." *IRS v. Century Boat Co. (In re Century Boat Co.),* 986 F.2d 154, 157 (6th Cir.1993) citing *United States v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087, 1091 (6th Cir.1990). However, a distinction is made between timely and tardily filed claims as filed by creditors.

IDOR's failure to file a timely claim triggered the debtors' authority to file a claim for it. However, debtors did not file such a claim within the 30–day limit prescribed in Rule 3004. Debtors now ask that their time for filing a claim on behalf of IDOR be extended. They contend that their neglect to file the claim within the 30–day period was the result of "excusable neglect." If such neglect is established, the court, in its discretion, may extend the filing period as Rule 9006(b)(1) is applicable to the time period set out in Rule 3004. Enlargements of time under Rule 3004 are not limited by that Rule's terms. *See* Fed. R.Bankr.P. 9006(b)(3).

Debtors contend that their neglect is excusable because they assumed IDOR would file, and no one advised debtors or their counsel that IDOR had failed to file. Debtors argue that it would be inequitable to debtors for the trustee to fail to pay the IDOR claim as the claim is nondischargeable. Motion, docket no. 16.

■ "The enlargement of prescribed time periods under the 'excusable neglect' standard of Rule 9006(b)(1) is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Pioneer Investment Services Co.,* —— U.S. at ——, 113 S.Ct. at 1496. The bankruptcy court must consider certain factors in determining whether debtors' neglect was excusable. These factors are the danger of prejudice, "the length of the delay and its potential impact on judicial proceedings, the reason for the delay,

including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at ——, 113 S.Ct. at 1498.

█ In considering the factor of prejudice, the court will consider the prejudice to the debtors and to other parties-in-interest. As IDOR has filed no claim and as debtors' obligation to IDOR may be nondischargeable, the prejudice to debtors would be the increased burden of repayment after bankruptcy. If debtors are correct in the classification and amount of IDOR's claim, IDOR would receive $1,931.11 of the $2,940.00 available for distribution. To the extent that IDOR may have a security interest in the funds held by the trustee, IDOR would be entitled to all of the funds held by the trustee, less any amount which might be surcharged under 11 U.S.C. § 506(c). Needless to say, the debtors would greatly benefit from any substantial payment to IDOR by the trustee. The prejudice to other creditors would be the delay inherent in any litigation regarding the allowability of IDOR's claims or regarding the validity and extent of its lien. To the extent that IDOR would be entitled to the money, the loss of a dividend by the creditors would not be prejudice. The court does not consider other creditors' receipt of lower dividends or no dividends as prejudice if this result is warranted by the facts and law.

█ Debtors' delay in seeking permission to file IDOR's claim has a great impact on the administration of the case. Debtors waited until they received notification of the trustee's report of distribution before filing their motion. This was a period of approximately two months, during which time the trustee prepared, filed and served his final report. If the debtors are allowed to file IDOR's claims, there may be objections to the claims and litigation over IDOR's purported liens. If the claims are allowed, the trustee would have to revise, refile and serve an amended final report. Debtors' delay will delay the final distribution and the closing of the case.

Although there is no basis for finding the debtors have not acted in good faith in filing their motion, their reason for the delay is weak. Even if they reasonably assumed that IDOR would file a claim, they had a 30–day period to determine if the claim was filed as they expected. That they were not notified of the failure is not a justification or reasonable excuse for the failure to file. The clerk of court had no obligation to notify the debtors or their counsel of the failure of IDOR to file. *Davis v. Columbia Construction Co., Inc. (In re Davis)*, 936 F.2d 771, 774 (4th Cir. 1991). The clerk's records of claims filed were available to the debtors, and nothing prevented debtors from inquiring whether IDOR had timely filed a claim. The filing of a claim on behalf of IDOR was within debtors' reasonable control.

In considering all the circumstances, the court finds that debtors' failure to file a claim for IDOR under Fed.R.Bankr.P. 3004 was not due to excusable neglect. Therefore, no extension will be granted to debtors under Rule 9006(b)(1).

The court must also decide whether despite the lack of an extension, debtors could still file a claim on behalf of IDOR and have the claim treated as a tardily filed claim. If available, such treatment would be helpful to the debtors. Assuming that IDOR has a pre-petition claim for taxes which would be entitled to priority treatment under 11 U.S.C. § 507(a)(7), IDOR would still receive a priority distribution under 11 U.S.C. § 726, despite the late filing of its claim. This is so because § 726(a)(1) makes no distinction in the order for payment of timely filed and tardily filed priority claims.

█ At least until distribution is made, an unsecured priority creditor can tardily file its claim and still receive its priority distribution. However, the court must decide if a debtor can tardily file such a claim on the creditor's behalf. This is a difficult question, and the court has found no case authority on point. From an examination of § 726, the court concludes that the debtors cannot tardily file a claim for a creditor who fails to file.

Section 726 provides the distribution scheme in chapter 7 cases. The first level or tier of distribution is to priority creditors in the order described in Code § 507. Again, § 726(a)(1) makes no distinction between tardily filed and timely filed priority claims. *In re Century Boat Co.*, 986 F.2d at 157. The second level of distribution is found in subsection 726(a)(2); it comprises three groups of creditors holding allowed unsecured claims. The groups which share equally at this second level of distribution are (1) claims timely filed by creditors (see § 501(a) of the Code); (2) claims timely filed on behalf of creditors by co-debtors of the debtor (see § 501(b)) and by debtors or trustees (see § 501(c)); and (3) claims tardily filed by creditors who lacked notice of the case in time for timely filing of a claim but who filed a claim in time to permit payment (see § 501(a)).

The third level of distribution is in payment of allowed unsecured claims which are tardily filed by the creditor, other than those tardily filed claims filed by creditors without ample notice as described in § 726(a)(2)(C). 11 U.S.C. § 726(a)(3). It is important to point out that this subsection does not provide for any distribution to creditors holding allowed unsecured claims proofs of which were tardily filed by debtors. This leads the court to conclude that debtors may not file tardy claims for creditors.

If an unsecured creditor fails to file a claim, it would receive no distribution under § 726. Section 501(c) of the Code permits the debtor to file a claim on behalf of a creditor who fails to file a claim timely. However, § 501 does not indicate whether the filing of the claim by the debtor after the expiration of the filing deadline would be treated as tardy or timely. However, § 726 indicates that an unsecured creditor may have an allowed claim considered timely filed by the debtor pursuant to § 501(c) of the Code. 11 U.S.C. § 726(a)(2)(B). But in order to obtain such treatment, the debtor must file the claim on behalf of the creditor within the period set out in Rule 3004. The debtor may obtain an extension of the time after its lapse by showing cause

and excusable neglect pursuant to Rule 9006(b)(1). The latter rule indicates that if the court finds cause and excusable neglect, it may "permit the act to be done." In this case, the act to be done is the filing of the creditor's claim under Rule 3004. Absent granting of the extension, a debtor may not file a claim for a creditor under Rule 3004 and Code § 501(c). The Supreme Court in *Pioneer Investment Services Co.* describes Rule 9006(b)(1) as "empowering the courts to accept late filings...." —— U.S. at ——, 113 S.Ct. at 1495. A conclusion that debtors may make only timely filings of creditors' claims under Code § 501(c) is congruous with the treatment of claims in § 726. That section provides for distribution on account of allowed unsecured claims filed timely by the creditor, tardily by the creditor, or timely by the debtor. It does not provide for distribution to an allowed unsecured claim proof of which was tardily filed by the debtor.

In dealing with distributions for allowed priority claims, § 726(a)(1) does not discuss whether the claims are timely or tardily filed. One might argue that, therefore, priority claims tardily filed by the debtor under Code § 501(c) and Rule 3004 would receive the same treatment as allowed priority claims filed by the creditor. Such a distribution might have been intended by Congress, yet the court concludes that such a scheme is less consistent than one which provides no distribution to priority claims late filed by the debtor. Why would Congress create a scheme which allowed for no distribution to general unsecured creditors based on a tardily filed claim by the debtor yet provide a distribution to a priority creditor based on a proof tardily filed by the debtor?

It would not be to protect the debtor from the burden of post-petition obligations on nondischargeable claims. A debtor's failure to timely file a claim for a creditor on a nondischargeable non-priority claim leaves the debtor liable after bankruptcy for the entire amount, as the general unsecured creditor will receive no distribution under § 726. And the court doubts that a

reason would be to protect the privileged status of certain claims such as taxes. That status is protected not only by their statutory priority but also by permitting priority distribution even when the creditor files a tardy claim.

The court concludes that Congress did not intend that priority creditors receive a distribution from the estate on account of proofs of claims tardily filed by debtors or trustees. If a debtor does not timely file a proof on behalf of the creditor, the creditor may not receive a priority distribution from the estate any more than a creditor may receive a distribution from the estate on account of a general unsecured claim tardily filed by a debtor or trustee.

■ The remaining issue is whether a priority creditor must file a claim at all in order to be entitled to a distribution from the estate. The court concludes that it must. Pursuant to § 502 of the Code, to be allowed, a claim must be filed. Unsecured claims for taxes by governmental units receive priority treatment only if their claims are allowed. 11 U.S.C. § 507(a)(7). Thus, only allowed priority claims receive first tier distributions under § 726(a)(1) of the Code.

### ORDER

IT IS ORDERED that debtors' motion to extend time for filing proofs of claim on behalf of the Iowa Department of Revenue is denied.

IT IS ORDERED that debtors' objection to the trustee's Final Report and Account is overruled. The Final Report and Account will be approved by separate order to be submitted by the U.S. Trustee.

SO ORDERED.