In re W. Randolph TUCKER, Debtor.

Bankruptcy No. 93 B 07270.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 16, 1994.

Bruce E. de'Medici, Chicago, IL, for American Express Centurion Bank, Local Counsel.

John D. Sheehan, Becker & Watkins, Malvern, PA, for American Exp. Centurion Bank.

Thomas R. Hitchcock, Chicago, IL, for debtor.

Craig Phelps, Chapter 13 Standing Trustee, Chicago, IL.

*MEMORANDUM OPINION*

RONALD BARLIANT, Bankruptcy Judge.

## I. INTRODUCTION

The Chapter 13 standing trustee objected to the proof of unsecured claim filed by American Express Centurion Bank ("AMEX") on the sole ground that the proof of claim was filed late. This Court holds that tardiness bars allowance of a claim.[1] Therefore, the objection is sustained and AMEX's claim will not be allowed.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## III. FACTS

The Debtor filed a Chapter 13 petition on April 2, 1993. The first date set for the meeting of creditors was May 11, 1993. The deadline for the filing of claims was accordingly set for August 9, 1993 pursuant to FED.R.BANKR.P. 3002(c) (i.e. "within 90 days after the first date set for the meeting of creditors"). AMEX did not file a proof of claim until November 9, 1993. On March 22, 1994, the trustee objected to the claim, asserting that the claim was untimely filed and should thus be disallowed. AMEX responded by relying on *In re Hausladen*, 146 B.R.

557 (Bankr.D.Minn.1992) ("*en banc*")[2] for the proposition that late-filed claims can be allowed in a Chapter 13 case.

## IV. BACKGROUND

At issue is whether a creditor's untimely or tardily filed proof of claim should be allowed in a Chapter 13 case. This is a controversial issue under the Bankruptcy Code ("Code") as it existed prior to the 1994 amendments and it has generated a flurry of decisions as well as a distinct split in authority. The leading opinion for the proposition that late-filed claims may be allowed in a Chapter 13 case is *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn.1992) (*en banc*). On the flip-side, the decision in *In re Zimmerman*, 156 B.R. 192 (Bankr.W.D.Mich.1993) (*en banc*)[3] is the leading case for the proposition that late-filed claims are not allowed in a Chapter 13 case.

## V. ANALYSIS

### A. Pre–Code Practice

The concept of requiring creditors to file proofs of their claims within a certain period of time has its origin in the Bankruptcy Act of 1898 ("Bankruptcy Act" or "Act"). Prior to the Act, there was no limit on the time to file claims. The absence of a time limit was perceived as unduly lengthening the administration of the "bankrupt's" estate; Congress therefore set a one-year limitation period for the filing of creditors' proofs of claims, reduced in 1926 to six months. The 1938 Chandler Act changed the starting point from the date of adjudication to the first date

1. This matter is controlled by the Bankruptcy Code in effect prior to the 1994 amendments. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 702(a) and (b), 108 Stat. 4106 (1994) (indicating that the pertinent amendment is to take effect prospectively from the date of enactment). Those amendments include a provision that adds a subsection (9) to the enumerated grounds for disallowance contained in 11 U.S.C. § 502(b). The relevant amendment states, in pertinent part, that a claim shall be disallowed where "(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide." Bankrupt-

cy Reform Act of 1994, Pub.L. No. 103–394, § 213, 108 Stat. 4106 (1994).

2. Pursuant to Minnesota Local Rule 109, the bankruptcy judges for the District of Minnesota are authorized to sit *en banc*. Local Rule 109 provides: "The judges may determine by order to enter a decision signed by all of the judges with respect to a dispositive question of law."

3. Unlike the Bankruptcy Court for the District of Minnesota, the Bankruptcy Court for the Western District of Michigan lacks a local rule authorizing *en banc* decisions. Nevertheless, the judges of the Michigan court chose to issue an *en banc* decision. With or without a local rule, it does not appear that such a decision has any greater effect than a decision by an individual judge.

set for the creditors' meeting. The change was accomplished by § 57(n) of the Act, which stated in part:

> all claims provable under this Act . . . shall be proved and filed in the manner provided in this section. Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed. . . .

11 U.S.C. § 93(n) (repealed 1978).

Section 57(n) also dealt with late-filed claims: "When in any case all claims which have been duly allowed have been paid in full, claims not filed within the [six month time period] may nevertheless be filed within such time as the court may fix or for cause shown extend and, if duly proved, shall be allowed against any surplus remaining in the estate." *Id.* Section 57(n), like most provisions under the Act, had a corollary in the old Rules of Bankruptcy Procedure ("old Rules").[4] Old Rule 13–302(e)(2) was "adapted from § 57(n) of the Act and retains the time limits on the filing of claims established by the statutory provisions." Fed. R.Bankr.P. 13–302, Adv.Comm. Note. Interestingly, the Advisory Committee omitted the provision in § 57(n) regarding payment of any surplus to late-filing creditors because the Committee deemed it "inconsistent with the rehabilitative purpose of Chapter XIII." *Id.*

The majority of courts held the 6 month time period contained in Rule 13–302(e)(2) and § 57(n) of the Act to be a strict statute of limitations.[5] These courts also held that the bankruptcy court lacked the discretion or the equitable power to extend the filing date. *See, e.g., In re Wilkens,* 731 F.2d 462, 464 (7th Cir.1984) *(per curiam ); In re Pigott,* 684 F.2d 239, 243 (3d Cir.1982). *See also, In re Good News Publishers, Inc.,* 33 B.R. 125, 126 (M.D.Tenn.1983) ("the filing deadline for proof of claims 'may not be extended once it expires and . . . the court's equitable authority is not thereafter available' ") (citation omitted). The majority view under the Act, then, was that the six month period was to be strictly applied and time extensions for filing were to be granted only according to the Rule and the statute. There was no room for judicial ruling of so-called "equitable considerations" in allowing untimely filed claims; the bankruptcy court lacked discretion to do anything but disallow such untimely filed proofs.

## B. Code Practice

Section 501 of the Bankruptcy Code governs the filing of proofs of claim: "[a] credi-

---

4. This provision is Rule 13–302 and it provided in pertinent part:

> (a) *Manner of Filing.* In order for his claim to be allowed, every creditor, including the United States, any State, or any subdivision thereof, must file a proof of claim in accordance with this rule, except as provided in Rule 13–303, 13–304 and 13–305.
>
> (e) *Time for Filing.*
> (2) *Unsecured Claims.* Unsecured claims, whether or not listed in the Chapter XIII Statement, must be filed within 6 months after the first date set for the first meeting of creditors in the Chapter XIII case, except as follows:
> (A) On application before the expiration of such period and for cause shown, the court may grant a reasonable, fixed extension of time for the filing of a claim by the United States, a state, or a subdivision thereof.
> (B) In the interest of justice the court may grant an infant or incompetent person without a guardian up to an additional 6 months for filing a claim.
> (C) A claim which arises in favor of a person or becomes allowable because of a judgment for the recovery of money or property from such person or because of a judgment deny-

ing or avoiding a person's interest in property may be filed within 30 days after such judgment becomes final, but if the judgment imposes a liability which is not satisfied, or a duty which is not performed, within such period or such further time as the court may permit, the claim shall not be allowed.

Fed.R.Bankr.P. 13–302(a), (e)(2) (1978).

5. *See, e.g., In re Wilkens,* 731 F.2d 462, 464 (7th Cir.1984) *(per curiam )* (the six month filing period is a statute of limitations to be treated as mandatory and immutable); *In re Pigott,* 684 F.2d 239, 242 (3d Cir.1982) (§ 57(n) and Rule 13–302(e)(2) are to be strictly construed); *In re International Resorts, Inc.,* 74 B.R. 428, 430 (Bankr.N.D.Ala.1987) (the six month period is a mandatory and immutable statute of limitations); and *In re Stern,* 70 B.R. 472, 474 (Bankr.E.D.Pa. 1987) (following *Pigott ). See also In re Valley Fair Corp.,* 4 B.R. 564, 566–67 (Bankr.S.D.N.Y. 1980) ("It is no longer a litigable issue, and needs no citation of abundant authority, that the period fixed by the statute for the filing of claims against the assets of an estate is a statute of limitations, mandatory and inexorable, peremptory and unyielding even to the exercise of some equitable power . . .").

tor ... may file a proof of claim." 11 U.S.C. § 501(a). The legislative history indicates that § 501 "governs the means by which creditors ... present their claims ... to the court ..." and that subsection (a) "is permissive only, and does not require filing of a proof of claim by any creditor.... The Rules of Bankruptcy Procedure and practice under the law will guide creditors as to when filing is necessary and when it may be dispensed with. In general, however, ... a proof of claim will be a prerequisite to allowance for unsecured claims ..." H.R.Rep. No. 595, 95th Cong., 1st Sess., 351 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., 61 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5847, 6307.

If a creditor fails to timely file his proof of claim, then "the debtor or the trustee may file a proof of such claim." § 501(c). Once the proof of claim is filed under § 501, the claim is "deemed allowed, unless a party in interest ... objects." § 502(a). Where such an "objection to a claim is made, the court ... shall determine the amount of such claim ... and shall allow such claim ... in such amount...." § 502(b). There are eight exceptions to § 502(b), whereby the court is to disallow the claim if it fits within one of the eight enumerated exceptions. *Id.*[6]

The Code itself does not discuss what constitutes a "timely" filed proof of claim. However, this omission is by design: "The Rules of Bankruptcy Procedure will set the time limits, the form, and the procedure for filing, which will determine whether claims are timely or tardily filed." H.R.Rep. No. 595, 95th Cong., 1st Sess., 351 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., 61 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5847, 6307. Rule 3002 of the Federal Rules of Bankruptcy Procedure fills the statutory gap left by Congress' intentional omission.[7] The ability of a court to extend the filing period is limited by Rule 9006(b)(3). That Rule provides that "[t]he court may enlarge the time for taking action under [Rule] ... 3002(c) ... only to the extent and under the conditions stated in those rules." FED.R.BANKR.P. 9006(b)(3). None of those conditions is pertinent here.

Prior to the decision in *In re Hausladen,* nearly every court that considered the question under Rule 3002(c) followed the majority view regarding § 57(n) of the Act and old Rule 13–302 that late-filed claims were barred.[8] Assuming that the interpretation of old Rule 13–302 and § 57(n) of the Act was correct, then this interpretation should apply to §§ 501 and 502 and Rule 3002(c) because "*Subdivision (c)* is adapted from former Bankruptcy Rule 302(e) but changes the time limits on the filing of claims in chapter 7 and

---

**6.** *See* footnote 1 for discussion of the recent amendment to § 502(b).

**7.** Rule 3002 provides in pertinent part:

> **(a) Necessity for Filing.** An unsecured creditor ... must file a proof of claim ... in accordance with this rule for the claim ... to be allowed, ...
> **(c) Time for Filing.** In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code....

FED.R.BANKR.P. 3002(a) and (c).

**8.** *See In re Davis,* 936 F.2d 771, 773 (4th Cir. 1991) ("creditors in a Chapter 7 proceeding who do not file proof of claim within 90 days after the creditors' meeting are *barred from filing such a claim*") (emphasis added); *In re Tomlan,* 907 F.2d 114 (9th Cir.1990) (*per curiam* ) (affirming and adopting in full the District Court's opinion at 102 B.R. 790, 796 (E.D.Wash.1989) (following

"the well-settled rule that an untimely claim cannot be allowed, and that the Bankruptcy Court has no discretion to allow such claims where no motion for an extension of time was filed prior to the running of the filing period") (citations omitted)). *Accord, In re Street,* 55 B.R. 763, 766 (9th Cir. BAP 1985); *In re Smartt Construction Co.,* 138 B.R. 269, 272 (D.Colo.1992); *In re Duarte,* 146 B.R. 958, 962 (Bankr.W.D.Tex.1992); *In re Weissman,* 126 B.R. 889, 893 (Bankr.N.D.Ill. 1991); *In re Wells,* 125 B.R. 297, 300 (Bankr. D.Colo.1991); *In re Ohio Movers & Storage, Inc.,* 118 B.R. 533, 534 (Bankr.N.D.Ohio 1990): *In re Shelton,* 116 B.R. 453, 454 (Bankr.D.Md.1990); *In re Glow,* 111 B.R. 209, 216–17 (Bankr. N.D.Ind.1990); *In re Roberts,* 98 B.R. 664, 665–66 (Bankr.D.Vt.1989); *In re Nohle,* 93 B.R. 13, 15 (Bankr.N.D.N.Y.1988) (Chapter 12); *In re Chirillo,* 84 B.R. 120, 122 (Bankr.N.D.Ill.1988); *In re Wilt,* 84 B.R. 480, 481–82 (Bankr.N.D.Ohio 1988); *In re Owens,* 67 B.R. 418, 423 (Bankr. E.D.Pa.1987), *aff'd,* 84 B.R. 361 (E.D.Pa.1988); *In re Key,* 64 B.R. 786, 788 (Bankr.M.D.Tenn. 1986); *In re Goodwin,* 58 B.R. 75, 77–78 (Bankr. D.Me.1986); and *In re Kennedy,* 40 B.R. 558, 559–60 (Bankr.N.D.Ala.1984).

13 cases from six months to 90 days after the first date set for the meeting of creditors." FED.R.BANKR.P. 3002(c), Adv.Comm. Note.[9]

## C. The *Hausladen* Decision

Prior to the decision in *In re Hausladen*, therefore, it was well-settled that late-filed claims were to be disallowed and extensions of time were limited to the situations explicitly described in Rule 3002. The court in *Hausladen*, however, rejected those principles by allowing late-filed claims in all circumstances. 146 B.R. 557 (Bankr.D.Minn. 1992) (*en banc*).

The court rejected the view that timely filing is a prerequisite to allowance. *Id.* at 559. The court reasoned that when Rules 3002(a) and 3002(c) are read together, they merely *imply* that timely filing is a prerequisite to allowance. *Id.* The court explained that it is improper to read these Rules as mandating timely filing as a prerequisite to allowance by concluding that "the drafters of the new Rule 3002 hastefully copied the substance of *old* Rule 302 without paying any attention to the major change in the underlying statute." *Id.* This major change was that the Act contained an express time bar, but the Code does not. *Id.* The Act, unlike the Code, provided that claims filed after a specified date "shall not be allowed." *See* 11 U.S.C. § 93(n) (repealed 1978). There is no similar language in §§ 501 or 502 of the Code. 146 B.R. at 559.

The majority of the court's analysis centered around § 502, however. The court first noted that § 502 exclusively governs the allowance and disallowance of claims and that § 502 lists eight specific grounds for disallowance. *Id.* The late filing of claims is not among the listed grounds. *Id.* The court reasoned that (a) all claims are deemed allowed unless a party in interest objects per § 502(a); (b) even if an objection is made, the court must still allow the claim unless it falls within one of the eight specific grounds for disallowance; (c) since late-filing is not among the eight grounds, late-filed claims must be allowed even if objected to on lateness grounds. *Id.* at 559–60.

Invoking the plain meaning doctrine, the court concluded that "[a]llowance of tardily filed claims clearly does not contravene the intent of the framers of the Code. Indeed, allowing tardily filed claims does not conflict with any other section of the Code, the legislative history of section 502 or for that matter any important state or federal interest.... The language being clear and in conformity with the intent of Congress, the plain meaning is conclusive; tardily filed claims are allowed." *Id.* at 560.

The court also found support for its position in § 726, which establishes distribution priorities in Chapter 7 cases.[10] For the court

---

9. *See also, In re Glow*, 111 B.R. 209, 216–17 (Bankr.N.D.Ind.1990) ("Although the *Wilkens* case was decided under Rule 13–302(e)(2), the predecessor to the present Bankr.R. 3002(c), this Court concludes that the holding in *Wilkens* is still applicable under the present Bankruptcy Rules."); *In re Stern*, 70 B.R. 472, 475 n. 4 (Bankr.E.D.Pa.1987) ("The current limitations period ... in Bankr. Rule 3002(c) ... was derived from former Bankr.Rule 302(e) and section 57n of the prior Bankruptcy Act. Thus, decisions interpreting these earlier provisions are relevant to an understanding of the current rule") (citation omitted); *In re Chirillo*, 84 B.R. 120, 122 (Bankr.N.D.Ill.1988) (the only difference between Rule 13–302(e)(2) and Rule 3002(c) is the actual length of the filing period: 6 months in the former and 90 days in the latter); and *In re Kennedy*, 40 B.R. 558, 559–60 (Bankr. N.D.Ala.1984) (the same analysis applies to the old Rules as to the new Rules).

10. § 726 provides in pertinent part:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section

in *Hausladen*, § 726 demonstrates that timeliness determines a claim's treatment, but not its allowance. *Id.* That section provides that "any allowed unsecured claim ... proof of which is tardily filed ..." is paid under certain circumstances. 11 U.S.C. § 726(a)(2)(C), (3). This implies that a late-filed claim may still be an allowed claim, and that tardiness affects only the priority enjoyed by that claim.

Next, the court concluded that, contrary to the majority view, § 502 and Rule 3002 operate *independently*, not in tandem. 146 B.R. at 560. This is the court's key premise. The court distinguished between the treatment or classification of a claim and the allowance of a claim. *Id.* The court found that "[t]he rights of tardily filing claim holders in Chapter 13 cases are not defined by the Code but rather are controlled by the Chapter 13 plan. *See* 11 U.S.C. § 1322(b)(10)." *Id.* The court's analysis on this point can be summarized as follows: (a) § 502 indicates which claims get treatment in the plan (allowed claims) and which claims do not get treatment in the plan (disallowed claims); (b) if under § 502 a claim is in the plan, (i.e. allowed), then the claim gets sent to Rule 3002 for classification as timely or tardy; (c) an allowed claim can be classified as either timely filed or tardily filed, but either way, it is allowed. *Id.* Thus, on the first level, a claim is either allowed or disallowed, and timeliness is *not* a ground for disallowance. Then, on the second level, once a claim has been allowed, it can either be timely filed or tardily filed and this latter choice determines

the allowed claim's treatment under the debtor's plan.

The court in *Hausladen* essentially leaves the treatment of late-filed claims in Chapter 13 cases to the particular plan in each case: the plan will determine the rights of the tardily-filed claim holders. *Id.* The court rejected the reliance on pre-Code practice as incorrect and irrelevant to an analysis of the Code. *Id.* at 561. The court, in rejecting the decisions in *Wilkens, Glow,* and *Chirillo,* decided that the Code differed significantly from pre-Code practice and that reliance upon pre-Code practice by those courts was therefore misplaced. *Id.* Specifically, the court concluded that § 502 "is anything but analogous to section 57(n) under the Act." *Id.* at 562. The court in *Hausladen,* based upon the aforementioned reasoning, then allowed the untimely filed claims. *Id.*

## D. Post–*Hausladen*

*Hausladen* has led many courts to address, or re-address, the disposition of late-filed claims. The majority of the cases that have allowed late-filed claims are Chapter 7 cases.[11] Of the Chapter 7 cases, two are inapposite because they are based on due process and equitable principles. *See In re Century Boat Co.,* 986 F.2d 154 (6th Cir. 1993) and *United States v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087 (6th Cir.1990).[12] Moreover, most of the Chapter 7 cases also deal with priority and subordination issues in the context of § 726. The Court has been unable to find any Chapter 7 case that

501(a) of this title other than a claim of the kind specified in paragraph (2)(C) of this subsection; . . . .
11 U.S.C. § 726.

**11.** *See, e.g., In re Pacific Atlantic Trading Co.,* 33 F.3d 1064 (9th Cir.1994); *In re Vecchio,* 20 F.3d 555 (2d Cir.1991); *In re Century Boat Co.,* 986 F.2d 154 (6th Cir.1993); *United States v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087 (6th Cir. 1990); *In re Stoecker,* 172 B.R. 579 (N.D.Ill. 1994); *In re Cole,* 172 B.R. 287 (Bankr.W.D.Mo. 1994); *In re Gold & Silversmiths, Inc.,* 170 B.R. 538 (Bankr.W.D.N.Y.1994); *In re Meyers,* 171 B.R. 274 (Bankr.N.D.Ohio 1994); *In re Sea Air Shuttle Corp.,* 168 B.R. 501 (Bankr.D.P.R.1994); *In re Miller,* 171 B.R. 163 (Bankr.S.D.Fla.1994); *Matter of Phillips,* 166 B.R. 129 (Bankr.S.D.Iowa 1994); *In re Brennan,* 167 B.R. 316 (Bankr.

D.Mass.1993); *Matter of Osman,* 164 B.R. 709 (Bankr.S.D.Ga.1993); *Matter of Brenner,* 160 B.R. 302 (Bankr.E.D.Mich.1993); *In re McLaughlin,* 157 B.R. 873 (Bankr.N.D.Iowa 1993); *In re Corporacion de Servicios Medico–Hospitalarios de Fajardo, Inc.,* 149 B.R. 746 (Bankr.D.P.R.1993); and *In re Rago,* 149 B.R. 882 (Bankr.N.D.Ill.1992).

**12.** The court in *Century Boat* limited the holding in *Cardinal Mine Supply* and held that the general rule is that late-filed claims are barred, but there is a narrow exception for priority creditors who have untimely filed due to a lack of notice, so long as the filing occurs before distribution, before the estate is closed, without bad faith, and without prejudice to the other creditors. 986 F.2d at 158.

squarely rejects *Hausladen* and does not allow a late-filed claim.[13]

Only a handful of cases have followed *Hausladen* and allowed late-filed claims in a Chapter 13 context.[14] At least one court has allowed a late-filed claim in Chapter 13 on the basis of a lack of proper notice, while rejecting *Hausladen* in *dicta. See In re Anderson,* 159 B.R. 830, 836 (Bankr.N.D.Ill. 1993) (following *Cardinal Mine Supply* and its progeny in a Chapter 13 context).

### E. The *Zimmerman* et al. View

A number of courts have rejected *Hausladen* in the Chapter 13 context and have "barred," "not allowed," or "disallowed" late-filed claims.[15] The leading case is *In re Zimmerman,* 156 B.R. 192 (Bankr.W.D.Mich. 1993) (*en banc*). For the reasons set forth below, the Court declines to follow the analysis and decision of the court in *Hausladen* and instead accepts and adopts the reasoning and result of the court in *Zimmerman.*

■ First, this Court agrees with the court in *Zimmerman.* The court in *Hausladen* erred in its purported harmonization of § 501, § 502, and Rule 3002. The correct interplay among these provisions is set forth by the court in *Zimmerman* and can be summarized as follows: (1) § 501 creates the substantive right to file a claim and identifies the parties holding that right; (2) § 502 provides for analysis of the merits of a claim; (3) § 502 states that a claim, proof of which is *filed in accordance with* § 501, is deemed allowed, unless a party in interest objects; (4) thus, filing under § 501 is a prerequisite to being deemed allowed under § 502; (5) § 501 contemplates a procedural requirement of timely filing, as § 501(b) and (c) discuss who may file in terms of whether or not someone else has *timely* filed; (6) Rule 3002 provides the procedural answer to when a claim is timely filed; (7) therefore, § 501 incorporates Rule 3002; and (8) since § 501 incorporates Rule 3002 and compliance with § 501 is a prerequisite or condition precedent to allowance under § 502, then compliance with Rule 3002 and its timeliness requirement is also a prerequisite or condition precedent to allowance under § 502. *Zimmerman,* 156 B.R. at 195–96.

■ The court in *Zimmerman* found that the key to understanding the late-filed claims issue lies in the proper interpretation of Rule 3002. *Id.* at 197. The court relied on the Rules Enabling Act ("REA")[16] to demonstrate the validity of Rule 3002 and refute the suggestion that Rule 3002 impermissibly

13. The Court notes that the bankruptcy court in *In re Stoecker* did reject *Hausladen* in a Chapter 7 context. 151 B.R. 989 (Bankr.N.D.Ill.1993). However, that decision was recently reversed. *See In re Stoecker,* 172 B.R. 579 (N.D.Ill.1994).

14. *See, e.g., In re Nanes,* 168 B.R. 715 (Bankr. D.Colo.1994); *In re Babbin,* 164 B.R. 157 (Bankr.D.Colo.1994): *In re Sullins,* 161 B.R. 957 (Bankr.M.D.Tenn.1993); *In re Brones,* No. 90–19489–PAC (Bankr.D.Colo. March 18, 1993); and *In re Judkins,* 151 B.R. 553 (Bankr.D.Colo. 1993).

15. *See, e.g., In re Osborne,* 159 B.R. 570 (Bankr. C.D.Cal.1993), *aff'd without published opinion,* 167 B.R. 698 (9th Cir. BAP 1994); *In re Gullatt,* 169 B.R. 385 (M.D.Tenn.1994); *United States v. Clark,* 166 B.R. 446 (D.Utah 1993); *In re Schaffer,* 173 B.R. 393 (Bankr.N.D.Ill.1994); *In re Grubb,* 169 B.R. 341 (Bankr.W.D.Pa.1994); *In re Robert,* 171 B.R. 881 (Bankr.N.D.Cal.1994); *In re Friesenhahn,* 169 B.R. 615 (Bankr.W.D.Tex. 1994); *In re Jones,* 164 B.R. 543 (Bankr.N.D.Tex. 1994); *Matter of Andrew,* 162 B.R. 46 (Bankr. M.D.Ga.1993); *In re Parr,* 165 B.R. 677 (Bankr. N.D.Ala.1993); *In re Leightner,* 161 B.R. 60 (Bankr.D.Or.1993); *In re Rome,* 162 B.R. 872 (Bankr.D.Colo.1993); *In re Messics,* 159 B.R. 803 (Bankr.N.D.Ohio 1993); *In re Crooker,* 159 B.R. 790 (Bankr.E.D.Ky.1993); *Matter of Keck,* 160 B.R. 112 (Bankr.N.D.Ind.1993); *In re Turner,* 157 B.R. 904 (Bankr.N.D.Ala.1993); *In re Chavis,* 160 B.R. 804 (Bankr.S.D.Ohio 1993); *In re Stoiber,* 160 B.R. 307 (Bankr.N.D.Ohio 1993); *In re Zimmerman,* 156 B.R. 192 (Bankr. W.D.Mich.1993) (*en banc*); *In re Johnson,* 156 B.R. 557 (Bankr.N.D.Ill.1993); and *In re Bailey,* 151 B.R. 28 (Bankr.N.D.N.Y.1993).

16. The REA provides:

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right.

Such rules shall not take effect until they have been reported to Congress by the Chief Justice at or after the beginning of a regular session thereof but not later than the first day of May and until the expiration of ninety days after they have been thus reported.

28 U.S.C. § 2075.

conflicts with § 502. First, the court cited *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965) for the presumptive validity of procedural rules, and *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14–15, 61 S.Ct. 422, 426–27, 85 L.Ed. 479 (1941) for the presumption that such rules reflect Congress' intent because Congress acquiesces in their approval. 156 B.R. at 196. Second, the court discussed "the rigorous adoption process" for the Rules, which leads to a "strong presumption that the rules correctly reflect the dichotomy between substantive law and procedural law" because any necessary balancing between substance and procedure has presumably been done through the adoption process. *Id.* at 196–97. The court then concluded that this presumption applies to the relationship between § 502 and Rule 3002: § 502 is substantive and Rule 3002 is procedural. *Id.* at 197. That is, the "enumerated grounds for denying allowance of a claim under § 502(b) are addressed to what has typically been considered substantive matters. By contrast, [Rule] 3002 concerns itself with the procedure which must be followed in filing a claim." *Id.* Furthermore, "[t]his complementary interpretation of § 502 and [Rule] 3002 is mandated by the presumption that the drafters of the rules did not intend to nor did they make substantive law when [Rule] 3002 was enacted." *Id.* Thus, there is no conflict between Rule 3002 and § 502.

■ It is not correct that, because the Code lacks the "shall not be allowed" language, a time bar no longer exists. The Supreme Court has indicated that where the language of a statute is plain, the "'sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), *quoting Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). The "plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Ron Pair Enterprises*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 *quoting Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973

(1982). Where the result would be at such odds with the legislative intent, "the intention of the drafters, rather than the strict language, controls." 489 U.S. at 242, 109 S.Ct. at 1031.

While § 501, § 502, and Rule 3002 are not ambiguous, they become ambiguous under the *Hausladen* view, and that view produces a result demonstrably at odds with the Code and the Rules (i.e. it allows late-filed claims). Therefore, it is appropriate to examine and rely on the legislative history for the purpose of testing the *Hausladen* decision. The legislative history reveals that "Congress, in revising and modernizing the bankruptcy law, removed and left to the Rules of Bankruptcy Procedure nearly all procedural matters formerly incorporated in the Act." *In re Johnson*, 156 B.R. 557, 560 (Bankr.N.D.Ill. 1993); *accord In re Zimmerman*, 156 B.R. 192, 197 (Bankr.W.D.Mich.1993) (*en banc*); and *In re Bailey*, 151 B.R. 28, 32 (Bankr. N.D.N.Y.1993). *See also* H.R.Rep. No. 595, 95th Cong., 1st. Sess. 449 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6405. Furthermore, Congress anticipated that "[t]he Rules of Bankruptcy Procedure will set the time limits, the form, and the procedure for filing, which will determine whether claims are timely or tardily filed." H.R.Rep. No. 595, 95th Cong., 1st Sess., 351 (1977); S.Rep. No. 989, 95th Cong., 2d Sess., 61 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5847, 6307. This demonstrates Congress' intent to place substantive provisions in the Code and procedural provisions in the Rules.

The argument in *Hausladen* that the "bar date" concept was congressionally eliminated can be refuted in several ways. First, "the fact that former § 57(n) of the Bankruptcy Act explicitly disallowed late claims while Code § 502(b) does not, fails to establish an abandonment of the Congressional 'bar date' concept in light of the language of" Rule 3002. *Bailey*, 151 B.R. at 32. Second, "Rule 3002(c) eliminates the need for Code language specifically excluding untimely or tardily filed proofs of claim. Consequently, the difference between Section 57n of the Bankruptcy Act and Code Section 502(b), by itself, lends no support for the *Hausladen* court's conclusion that Congress abandoned the 'bar

date' concept." *Johnson*, 156 B.R. at 560. Third, as the court in *In re Messics* said, "[i]t seems anomalous to suppose that Congress would have made such a radical change from prior bankruptcy practice without some indication that this was its intent." 159 B.R. 803, 809 (Bankr.N.D.Ohio 1993). The Supreme Court has instructed that:

> When Congress amends the bankruptcy laws, it does not write "on a clean slate." Furthermore, this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.

*Dewsnup v. Timm*, 502 U.S. 410, ——, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) (citations omitted). It also seems anomalous that the drafters of the Rules would miss such a significant change in the law if there was in fact such a change. *Messics*, 159 B.R. at 809. That is not what happened. Rather, Congress, in rewriting the bankruptcy laws, relegated procedural matters to the Rules; filing deadlines are procedural and thus were properly placed in the Rules.[17] That, not a decision to change prior law, is why the Code does not repeat the provision of § 57(n) disallowing late-filed claims.

The court in *Zimmerman* demonstrated that there is an important difference between a claim *"not allowed"* pursuant to § 501 and a claim *"disallowed"* pursuant to § 502. The court in *Zimmerman* explained the "semantics" of this issue by noting that:

> the process of claims allowance involves several steps, and "disallowance" under [§ 502 and Rule 3002] describes different events. The first step in the process is filing a claim. The substantive rights of various parties to file claims are found in § 501; the procedure for doing so is located in [Rule] 3002. Once filing is accomplished, the substance of the claim is considered under § 502. A claim may not be

allowed because of defects at any of these steps.

156 B.R. at 198. Whether a claim is eligible to be considered under § 502 depends first on whether the claim has been properly and timely filed. Only after a proper filing per § 501 and a timely filing per Rule 3002 (incorporated into § 501), may a claim be considered under § 502's standards regarding disallowance. The court in *Zimmerman* correctly criticizes the court in *Hausladen* for collapsing the steps into one step. *Id.*

The court in *Zimmerman* then explained the difference between "barred" and "disallowed". *Id.* at 198–99. A *barred* claim differs from a *disallowed* claim, even though the terms are used interchangeably. A claim is barred, that is, not even considered under § 502, if it fails to comply with § 501's procedural requirements, including the requirement that a claim must be timely filed (as is set forth in Rule 3002). In contrast, only a non-barred claim can be disallowed. That is, § 502 only applies once § 501 has been satisfied, and § 502 states the substantive grounds to disallow a properly and timely filed proof of claim.

The court in *Hausladen* focused solely on disallowance under § 502(b) in concluding that since timeliness is not a listed ground for disallowance, an untimely filed claim must be "deemed allowed." *Hausladen*, 146 B.R. at 559–60. This analysis ignores the requirement of § 502(a) that the conditions of § 501 must be satisfied before § 502(b) is applicable. This is what the court in *Zimmerman* meant when it criticized the court in *Hausladen* for collapsing the several steps into just one step and for confusing what really is a barred claim with a disallowed claim (and vice versa).

Moreover, reliance on § 726 is misplaced, especially in a Chapter 13 case. Initially, § 726 applies only to Chapter 7 cases[18] and thus is inapplicable to the case at bar. However, the court in *Hausladen* re-

---

17. There are other filing deadlines in the Rules, rather than in the Code. *See, e.g.,* FED. R.BANKR.P. 4003 (deadline for filing debtor's claim of exemptions and objections thereto); FED.R.BANKR.P. 4004 (deadline for filing com- plaint objecting to discharge); and FED. R.BANKR.P. 4007 (deadline for filing complaint under § 523(c) objecting to discharge).

18. *See* 11 U.S.C. § 103(b).

lied, without elaboration, on § 726 [19] to make a statutory construction argument. The court said that § 726 is "a clear illustration of the principal [sic]: while treatment of a claim may be dependent on its timeliness, allowance is not." 146 B.R. at 560. Essentially, the argument, at least as elaborated upon by other courts, appears to be that § 726(a)(2)(C) and § 726(a)(3), through the references to "timely filed" as well as to "tardily filed" proofs of claim, are evidence that the Code does indeed contemplate the allowance of tardily filed claims, which conflicts with Rule 3002. Section 726 and Rule 3002 are then construed to avoid this potential conflict: Rule 3002 merely classifies claims for purposes of distribution under § 726. Finally, these courts argue, since Rule 3002(c) by its terms applies to both Chapter 7 and Chapter 13, the interpretation necessitated by § 726 should also hold true for Chapter 13 cases as well as Chapter 7 cases.

■ We disagree. Rule 3002 cannot be read to mean anything other than a late-filed claim cannot be allowed. Therefore, either the Rule is invalid or it must be reconciled with the Code. Although in *Hausladen* the court's attempt at such reconciliation fails, there is another way.[20]

The reasoning in *In re Gullatt* regarding § 726 is persuasive. *See* 169 B.R. 385, 389–90 (M.D.Tenn.1994). The starting point is the long-standing general principle that late-filed claims are not allowed, a principle that has been a part of bankruptcy jurisprudence for quite some time. *Id.* at 389. In that light, § 726, insofar as it purports to allow late-filed claims, can be seen as an exception to that general principle. As the court in *Gullatt* noted, the "primary purpose of § 726(a)(2)(C) is to determine the priority of claims filed late because the creditor did not receive adequate notice." *Id.* Several courts also rely on due process, fundamental

fairness, and principles of equity in allowing late-filed claims. *See, e.g., United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087 (6th Cir.1990). Section 726(a)(2)(C) can thus be seen as merely recognizing "an existing exception to the timely filing requirement" and it simply specifies the priority of those claims filed late due to inadequate notice. *Gullatt*, 169 B.R. at 389.

Section 726(a)(3) also embodies a codification of an equitable exception to the general rule not allowing late-filed claims. The court in *Gullatt*, by looking to the 1938 amendments, identified two of Congress' consistent equitable concerns as being (1) to give the government greater latitude in filing and (2) to give any remaining surplus to tardily filing creditors ahead of the debtor. *Id.* Then the court found that Rule 3002(c)(1) is consistent with the former and that § 726(a)(3) is consistent with the latter. *Id.* The court concluded that § 726(a)(3) "does not, therefore, represent any significant change from prior law, . . . and is not evidence of any change in congressional intent. Section 726(a)(3) codifies an exception to the bar date now contained in Rule 3002, and does not call into question the general rule that late filed creditor claims are" not allowed. *Id.*

■ There are important differences between Chapters 7 and 13 that support a construction that limits the effect of § 726 to Chapter 7 cases. The purpose of a Chapter 7 case is to liquidate the debtor's non-exempt assets and to distribute the proceeds to creditors. The debtor loses any interest in those assets when the estate is created. *See* 11 U.S.C. § 541(a). In a Chapter 7 context, therefore, it would serve no Congressional purpose, and would be inequitable, to allow the debtor to get any of those proceeds before all creditors were paid in full. For that reason, late-filed claims should be paid before any distribution to the debtor, and that is accomplished by § 726. This is simply a

---

19. *See* footnote 10 and accompanying text.

20. *See In re Turner*, 157 B.R. 904, 911 (Bankr. N.D.Ala.1993) (the REA indicates the Rules must be consistent with the statute; thus, where possible, the Rules should be interpreted to avoid conflict); and *In re Bailey*, 151 B.R. 28, 33 (Bankr.N.D.N.Y.1993) (rules of statutory construction require interpretation such that no clause, sentence, or word is rendered superfluous, contradictory, or insignificant; since the Rules are promulgated by the Supreme Court pursuant to the Congressional authority of 28 U.S.C. § 2075, they have the force of law and should be harmonized with the Code).

codification of long-standing law. Even when § 57(n) of the Act disallowed late-filed claims, holders of late-filed claims were paid before the debtor. *See* 11 U.S.C. § 93(n) (repealed 1978).

In a Chapter 13 case, by contrast, the debtor keeps the assets in exchange for an agreement, reflected in the plan, to make periodic payments to the creditors. Those payments must give the creditors the same value they would have received in a Chapter 7 case. *See* 11 U.S.C. § 1325(a)(4). If late-filed claims were not barred, it would never be possible to determine with finality what payments are required to meet that standard. Such a rule would also put at risk the rehabilitative goal of Chapter 13 to enable the debtor to retain assets, which usually include the debtor's home. *See generally, In re Johnson,* 156 B.R. 557 (Bankr.N.D.Ill. 1993).

Nor is it enough to say, as the court in *Hausladen* does, that the plan can deal with late-filed claims. First, § 1322, which sets out mandatory and permitted plan terms, says nothing about late-filed claims. *See* 11 U.S.C. § 1322. Second, a strictly enforced bar date promotes a policy of finality in the distributional process by preventing late-filing creditors from recapturing already distributed plan payments, thus allowing creditors to use the funds they receive. *See Turner,* 157 B.R. at 911; *Zimmerman,* 156 B.R. at 199; and *Bailey,* 151 B.R. at 33. Third, strict enforcement of the bar date fosters a prompt administration of the estate, as creditors have incentive to file within the deadline to avoid being left out, thus speeding up the administrative process, as the payments can be made with confidence upon the expiration of the bar date. *See Zimmerman,* 156 B.R. at 199. Fourth, not allowing late-filed claims promotes a policy of even-handed treatment of creditors in that unsecured creditors who timely file will participate in the plan while those who untimely file will not. *See Bailey,* 151 B.R. at 33. Moreover, this will prevent prejudice to timely filing claim holders by preventing late-filed claims from unfairly reducing the *pro rata* dividend of those who did

timely file. *Id.* Finally, there is a policy of administrative efficiency and practicality which would be upset if deadlines were not strictly enforced. *Turner,* 157 B.R. at 911. This administrative concern was discussed at length by the court in *Zimmerman:*

> A bar date is necessary so that a reorganization plan may more easily be formulated. Furthermore, a plan can only be administered after all claims against the estate have been filed. In chapter 13 cases, once the claims have been filed, the parties can determine with certainty the dividend percentage to be paid to holders of allowed unsecured claims. In some cases, application of the [§ 1325] confirmation standards would be impossible if the calculations were subject to change due to the filing of late claims. Calculations involving plan distributions would be extremely difficult even if late claims were paid less than other claims because the late claims would still be taking something away from the timely filed claims. The debtor and all timely filing creditors benefit from the claims bar date because the case can be administered much more efficiently. On the other hand, no injustice results by barring late filed claims of unsecured creditors who have timely notice of the bar date.

156 B.R. at 199 (footnote omitted).

This policy analysis has support in the legislative history: "Chapter 13 is designed to serve as a flexible vehicle for the repayment of part or all of the *allowed* claims of the debtor." S.Rep. No. 989, 95th Cong., 2d Sess. 141 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5927 (emphasis added). This purpose can only be effectuated if "all unsecured creditors seeking payment under the plan file a proof of claim. A date certain for such filings is crucial to the ability to determine the full extent of the debts and evaluate the efficacy of the plan in light of the debtor's assets and foreseeable future earnings." *In re Tomlan,* 102 B.R. 790, 792 (E.D.Wash.1989), *aff'd and adopted in full,* 907 F.2d 114 (9th Cir.1990) *(per curiam ).*[21]

---

21. The Supreme Court, in another context, has held that the time limits in the Bankruptcy Code

must be enforced. *Taylor v. Freeland & Kronz,* —— U.S. ——, ——, 112 S.Ct. 1644, 1648, 118

## VI. CONCLUSION

This Court holds that late-filed claims in Chapter 13 cases are not allowed and are thus barred, thereby precluding any consideration of the late-filed claim under § 502(b). This Court further holds that Rule 3002 is incorporated into § 501 and thus timeliness is a prerequisite to allowance under § 502. The Court adopts the reasoning and results of the courts in *In re Zimmerman,* 156 B.R. 192 (Bankr.W.D.Mich.1993) (*en banc*), *In re Messics,* 159 B.R. 803 (Bankr.N.D.Ohio 1993), and *In re Gullatt,* 169 B.R. 385 (M.D.Tenn.1994). Therefore, in light of the foregoing conclusions, the Court sustains the trustee's objection to AMEX's late-filed claim and that claim is consequently barred as untimely filed in contravention of Rule 3002 and § 501.

A separate Order will be entered accordingly.

L.Ed.2d 280 (1992) ("Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality"). *See also, Maressa v. A.H. Robins Co. Inc.,* 839 F.2d 220, 221 (4th Cir.) (*per curiam*) (interpreting Rule 3003(c)(3) in a Chapter 11 case, the court said "[t]he clear Congressional intent to require filing of valid proofs of claims within the established time limits precludes any exceptions based on general equitable principles. While the effects of the bar date appear harsh, any other result would undermine the clear purpose of the Bankruptcy Rules" to promote certainty and finality), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 53 (1988).